

## AGREEMENT FOR OPTION TO PURCHASE REAL ESTATE

This agreement entered into this 14TH day of January, 2019, between **D. C. Chapman Ventures, Inc.,** a West Virginia Business Corporation, whose address is P.O. Box 854, Summersville, WV 26651-0854 (hereinafter: "**Optionor**") and **Living Lands, LLC,** a West Virginia Limited Liability Company, whose address is 117 State Route 34, # 7040, Hurricane, WV 25526, (hereinafter: "**Optionee**").

WHEREAS, **Optionor** is owner of surface rights and certain mineral rights at certain real property that is more fully, albeit perhaps not completely, described as "the Spruce Run Coal Company Land" in Deed Book 128, Page 377, Hamilton District, in the Office of the County Clerk of Nicholas County, WV and below the 2180 foot elevation contour interval described by the United States Geological Survey Widen Quadrangle 7.5 Minute Series topographic map (hereinafter: the "**Property**").

WHEREAS, **Optionor** and **Optionee** (hereinafter: collectively, "the **Parties**") recognize that environmental conditions on and in the vicinity of the **Property** have been adversely impacted by historic coal mining operations on and in the vicinity of the Property; and

WHEREAS, **Optionor** warrants that **Optionor** has never conducted and never authorized or consented to such coal mining operations on the **Property**, nor leased the **Property** to persons who conducted such coal mining operations, and that **Optionor** never profited, in any way, from such operations; and

WHEREAS, notwithstanding the condition at, emanating from, or adversely impacting on present or future uses of the Property, **Optionee** is interested in purchasing the Property for the purposes of re-purposing/development/redevelopment of the Property, though only if **Optionee** can first determine to its reasonable satisfaction:   (i) if such re-purposing/development/ redevelopment is economically practicable for **Optionee**; and (ii) if it is feasible in a timely manner either to mitigate/remediate adverse environmental conditions on or adversely affecting the Property vis-à-vis potential future profitable uses of the Property, or have them mitigated by others who are legally responsible for the investigation and abatement of any adverse environmental conditions at or affecting the present or future uses of the Property or that may present endangerments to health or the environment at, in the vicinity of, or adversely affecting the **Property** and its futures uses; and

WHEREAS, the Parties are interested in entering into an agreement which would: (a) permit an immediate and time-restricted opportunity for **Optionee** fully to evaluate the feasibility of delineating and addressing such adverse environmental conditions prior to making a final decision to purchase the **Property**; and (b) if feasible, would provide an adequate opportunity for Optionee, **at its sole cost and expense**, to seek and obtain appropriate legal and equitable relief, either from those persons and entities with legal responsibility for the investigation and abatement of any adverse environmental conditions at or affecting the present or future uses of the **Property**, or an conditions that may present endangerments to the health or the environment at, in the vicinity of, or adversely affecting the Property prior to consummating the purchase of the Property.

NOW THEREFORE, the **Parties** agree as follows:

1. **Option to Purchase.**  In consideration for the amount of Three thousand dollars ($3,000.00) ("Option Price"), cash in hand paid by **Optionee** to **Optionor**, the receipt and sufficiency of which are hereby acknowledged, **Optionor** hereby grants unto **Optionee**, an irrevocable (by **Optionor**), exclusive right and option during the Term of this Option Agreement to purchase the **Property** ("the **Option**") and, upon exercise, to thereupon purchase same as provided herein.  Upon exercise of the **Option**, the total purchase price of the **Property** shall be the sum of One Million dollars ($1,000,000.00), such amount to be addition the **Option** Price, to be paid by guaranteed funds from **Optionee** at the time of the closing of this sale or by such other means as the Parties may agree.

2. **Optionee's Right to Revoke; Term of Option.**
   a. *Option Granted:*  Unless the Optionee earlier has disclaimed the right to revoke this Option Agreement in a writing delivered to the **Optionor**, within a period of forty-five (45) days from the date of this Agreement reflected above (the "**Revocation Period**"), **Optionee** shall have the exclusive and unconditional right to revoke the Option granted by this Agreement.  During that forty-five (45) day period the **Optionee** may conduct initial investigatory activities on the **Property**, including the sampling of environmental media, in order to make any preliminary determinations on: (i) the nature and extent of adverse environmental conditions; or (ii) on the feasibility of **Optionee's** plans possible future use, re-purposing or redevelopment of the **Property**. At any time during such period, **Optionee** may exercise its right to revoke by delivering

written notice of revocation to the **Optionor**, at which point, **Optionor** shall, with five (5) working days of his receipt of such notice, return to **Optionee's** legal counsel reflected below Fifteen hundred U.S. dollars ($1,500) of the Option Price and the Option shall immediately terminate. Either before or after the termination of the **Revocation Period**, the **Optionee** may, at its own expense, record with Nicholas County or other appropriate governmental authorities, a memorandum advising others of its irrevocable option to purchase the Property.

b. *Term of Option Granted & Rule Against Perpetuities Matters:* Notwithstanding anything to the contrary herein, this Option Agreement and the Option granted by it, though irrevocable by Optionor in every other respect, shall expire and may no longer be exercised upon the following events:

    i. Ninety (90) day after the entry of a final, non-appealable Order by a court of competent jurisdiction fully and finally resolving all claims brought by **Optionee** seeking the full investigation and abatement of adverse environmental conditions at, emanating from, or adversely affecting the **Property** or its present and future uses against parties responsible or potentially responsible for such conditions; or

    ii. Two (2) years from the date the Option is executed in the event that Optionee fails to seek and obtain appropriate legal and equitable relief, either from those persons and entities with legal responsibility for the investigation and abatement of any adverse environmental conditions at or affecting the present or future uses of the **Property**, or any conditions that may present endangerments to the health or the environment at, in the vicinity of, or adversely affecting the Property prior to consummating the purchase of the Property.

    iii. Twenty-one (21) years following the death of U.S. Senator Joe Manchin.

c. If, and to the extent that, a memorandum providing notice of the **Option** has been recorded pursuant to Paragraph 2.a., above, **Optionee** shall, upon such expiration, promptly draft and record with Nicholas County, WV or other appropriate governmental authorities, a memorandum stating that the Option has expired according to its terms and may no longer be exercised. Should **Optionee** fail to record such a memorandum within thirty (30) days of **Optionor's** written request to do so, **Optionor** may, prepare and record such a memorandum.

3.    **Manner of Exercise.**  The Option granted hereunder may be exercised through **Optionee's** delivery to **Optionor** of written notice of intent to exercise the Option.  Upon the giving of timely notice of the exercise of this option as above provided, **Optionor** shall then be obligated to sell and **Optionee** shall then be obligated to purchase the Property in a timely manner on the following terms and conditions:

a.   The **Parties** agree to prorate all city, and county *ad valorem* taxes for the then current tax year on the property as of the date of the execution and delivery of the warranty deed by the **Optionor**.

b.   Transfer of title shall be by recordable general warranty deed, signed and delivered by **Optionor** and conveying title to such person or persons designated by **Optionee** in writing.  Title conveyed shall be subject only to easements, covenants, conditions, and restrictions which are, as of the date hereof, currently of record.  Necessary easements, if any, to the subject lands for access to a public road, construction, power and/or telephone will be granted by **Optionor** and shall be included in warranty deed.  Title conveyed will not be subject to any liens, mortgages, or security interests, and all such matters shall be cured at closing from purchase funds.

c.   Except as may otherwise be agreed in writing between the **Parties**, possession of the above described land shall be delivered over to **Optionee** at the closing with the delivery of the deed.

d.   The closing of this sale shall take place at a mutually acceptable date and place, following the exercise of the option but not more than thirty (30) working days after the **Optionee** has received written notice of **Optionee's** intent to exercise the Option and after all contingencies mentioned in this **Option** have been met.

e.   The obligation to purchase is further contingent upon **Optionee's** acquiring approval and authorizations from the appropriate local, state and federal agencies, including but not limited to any local zoning or planning board.  **Optionor** will cooperate and participate in any applications, hearings and/or other procedure to obtain the necessary approval.  Should such approvals not be obtained, **Optionee** may, at its election, be released from its obligation to purchase and **Optionor** shall keep all moneys paid by **Optionee** hereunder.

f.   Title to the Property must be merchantable, that is, free and clear of all liens, encumbrances and defects to the reasonable satisfaction of **Optionee's** attorney.

Optionee may obtain an ATLA title insurance policy prior to closing, at its own expense. Optionor shall cooperate in any reasonable manner in assist in obtaining such policy.

g. Should any contingency that is an obligation of **Optionor** herein not be met within three (3) months of notice of exercise of this option, **Optionee** may, at its sole election, be released from its obligation to purchase upon written notice to the **Optionor** of such election and all funds (other than for damages to persons or properties as above provided) paid **Optionor** shall be then refunded. However, **Optionee** may elect to waive any contingency not met, proceed with the purchase or otherwise enforce **Optionee's** rights to purchase.

4. <u>**Assignability of Option.**</u> **Optionee** shall have the right freely to assign its rights under this Option ~~Contract~~ to any person or entity, so long as such person or entity agrees to be bound by the terms herein and so long as written notice of such assignment is timely delivered to **Optionor** in the manner required below. In the event this Option is assigned to a third party Optionee shall provide written notice of such assignment to Optionor, which notice shall contain the name, address and telephone numbers of the person or entity to whom this Option was assigned. In the event of such assignment the parties shall be bound by the terms of any other written agreement between or among them relating the such assignment and/or the sale of this Option.

5. <u>**Optionor Representations and Undertakings.**</u> The **Optionor** represents that, as of the date of this option, the person executing this Agreement on behalf of the **Optionor**, D. C, Chapman Ventures, Inc., is fully authorized to enter into this Agreement by **Optionor**, that **Optionor** has good and merchantable title to the **Property**, that the **Property** is zoned in a manner to allow residential development, there is an assignable adequate access easement to the property for ingress and egress, and power, ~~and telephone service~~, and that to the best of Optionor's knowledge and belief it is not in a flood zone. **Optionor** represents that the land is not part of his homestead nor is it subject to any homestead or marital rights of any other person or, if it is homestead or subject to marital rights, sufficient persons have signed this document to allow its enforcement. **Optionor** will take such actions as may be necessary to maintain such title and status pending closing. **Optionor** knows of no regulations and/or laws related which would restrict the use of the property for residential development, and to the best of Optionor's knowledge and belief there are no endangered species or protected wildlife existing on the **Property** which would restrict the development of the **Property**. **Optionor** represents that to the best of Optionor's knowledge

and belief the Property is not a "wetlands" as that term is used in the Federal Clean Water Act. Nevertheless, should investigation disclose any of the foregoing conditions on the property which in the opinion of **Optionee's** attorney would restrict the use of the property for its intended use, **Optionee** shall be entitled, at its sole option, to rescind this Agreement.

6.   **Optionee's Agreement Timely to Commence and Diligently to Pursue Appropriate Legal Actions to Compel Responsible Persons or Entities Timely and Competently to Investigate and Abate the Adverse Environmental Conditions on or Affecting the Property.**   Upon the Option becoming irrevocable, **Optionee** timely shall commence and diligently pursue all reasonable legal steps to secure the timely and full investigation and abatement of adverse environmental impacts on and affecting the Property, at the ultimate cost of those persons or entities (and the indemnitors or insurers of such persons or entities) who have caused or contributed to such impacts or who otherwise bear legal responsibility for the investigation and abatement of such impacts and endangerments.

7.   **Optionor's Duty of Cooperation.**   The **Parties** agrees that as of the date the **Optionee** disclaims its right to revoke this Option Agreement pursuant to Paragraph 2(a) of this Agreement, or upon expiration of the Revocation Period, whichever occurs first:

(a) **Optionor** may, in its reasonable discretion and in the name of the **Optionor**, investigate, assess, assert and prosecute, settle, assign, or otherwise resolve any legal or equitable claims, chooses in action or rights of action that the **Optionor** has or may have that relate, directly or indirectly, to injuries or damages arising, directly or indirectly out of, or to the appropriate investigation or abatement of: (i) any condition of private nuisance or public nuisance, or any adverse environmental conditions at, emanating from, or adversely impacting in any way the present or future uses of the Property, or (ii) any condition at or affecting the Property that may present an endangerment to the Public Health, Safety, Welfare or the Environment;

(b) the claims that **Optionor** has and may assert pursuant to this Paragraph (7) include all claims for recovery of attorneys' fees, litigation costs (non-exclusively including expert witness fees and costs), and all related claims for recovery of abatement or response costs incurred or to be incurred in connection with the claims, chooses in action, and rights of action described in Paragraph 7(a);

(c) **Optionor** shall in good faith provide reasonable cooperation with respect to all of **Optionee's** efforts to secure the timely and appropriate investigation and abatement of the adverse environmental conditions on and affecting the Property, non-exclusively including the production of books and records and the provision of relevant, non-privileged testimony at **Optionor's** sole expense.

8. <u>**License for Access to Property for Necessary Activities.**</u>  At all times during the term of the Option, **Optionee** shall enjoy a license for access to the **Property**, non-exclusively including any surface or subsurface are that Optionor may have access rights to or legal authority over so that **Optionee** and its legal counsel, contractors, consultants, and expert witnesses (collectively, "**Optionee Invitees**") can undertake and complete all necessary and proper investigation and abatement activities with respect to any actual or suspected adverse environmental impacts on and affecting the Property, including (without limitation) the specific activities delineated below, deemed necessary and proper by **Optionee**.  Such license shall permit access, at reasonable times, to the property and shall include permission to enter the property with necessary vehicles and equipment (both temporary and permanent) for investigation and abatement activities.  **Optionee** shall have the right to extend such license to parties which are or may be responsible for such adverse environmental impacts and to the legal counsel and consultants for such parties (collectively, "**Adverse Invitees**").  For the protection and benefit of **Optionor**, **Optionee** shall ensure, at **Optionee's** expense, that the **Optionee's** Invitees have liability insurance coverage in the minimum amounts of $1,000,000 per occurrence and $1,000,000 in the aggregate for any work they may perform on the Property. **Optionee** shall ensure that any **Adverse Invitees** have similar liability coverage, to be provided at their own expense.  The activities permitted under this license shall include (without limitation) the following.

a. to view and inspect the Property;

b. to make necessary measurements and surveys of the Property;

c. to sample environmental media, including soils, groundwater, surface water, and air;

d. to remove contaminated environmental media for appropriate offsite treatment, storage, or disposal or to conduct remedial activities in order to reduce, mitigate, or otherwise abate any harmful constituents or contaminants within such media;

e. to install any necessary groundwater monitoring wells or equipment necessary to sample environmental media;

f.  to place or install equipment that is or may be reasonably necessary for the foregoing purposes;

g.  to cut trees and to remove vegetation, but only as may be necessary for the purposes of environmental investigation or remedial activities (in the event of such cutting, Optionee will pay to Optionor the reasonable value of such trees or timber, not to exceed the statutory value for wrongful cutting of same);

Notwithstanding anything to the contrary herein, such License granted hereunder shall not include any license or permission to enter any buildings on the Property without the prior, express permission of the building occupant, nor does it include the permission to alter or destroy any improvements on the Property.

9.  **Sale or Transfer of Option.** Optionee shall have the right to sell or otherwise transfer the option for any consideration. Should

10.  **Manner of Notice.** All notices rendered hereunder shall be considered as having been delivered four (4) business days following the deposit of such notice, in written form, in first class U.S. Mail, postage prepaid, or immediately upon personal delivery to the following addresses:

**To Optionor:**

D. C. Chapman Ventures, Inc.
Attn: D. Craig Chapman, President
P.O. BOX 854
SUMMERSVILLE, WV, 26651

**To Optionee:**

Living Lands, LLC
Attn: James G. Morgan, Jr.
117 State Road 34, # 1040
Hurricane, WV 25526
Telephone: (304) 460-8617
Facsimile: (304) 520-0194
E-Mail: living.lands.llc@gmail.com

**With copy to Optionor's counsel:**

Gregory W. Sproles, PLLC
509 Church St.
Summesville, WV 26651
Telephone: 304-872-2271
Facsimile: 304-872-5713
E-Mail: gsproles@sproleslaw.com

**With copy to Optionee's counsel:**

Michael O. Callaghan, Esq.
NEELY AND CALLAGHAN
159 Summers Street
Charleston, WV 25309
Telephone: 304-343-6500
Facsimile: 304-343-6528
E-Mail: mcallaghan@neelycallaghan.com
And

Michael C. Donovan, Esq.
Law Offices of Michael C. Donovan
530 Showers Drive, Suite 7 # 305
Mountain View, CA  94040-1495
Telephone & Facsimile: 650-745-1190
E-Mail:  mcd@legal-recoveries.com

11.     __Miscellaneous.__   This Option is for the benefit of and binding upon the heirs, successors and assigns of the Parties hereto.  This Agreement is the result of arms-length, good faith negotiations between the **Parties**, with the aid, advice and assistance of their respective legal counsel, and shall be considered as jointly drafted for all purposes.

IN WITNESS WHEREOF, **Optionor** and **Optionee** have executed this instrument in duplicate originals as of the date first set out above.

OPTIONEE:

D. C. Chapman Ventures, Inc.
A West Virginia corporation

BY: _____
        D. Craig Chapman

TITLE:  President

OPTIONOR:

**Living Lands, LLC**
a West Virginia limited liability company

BY: _____
        James G. Morgan, Jr.

TITLE:  Managing Member