PLAINTIFF'S
EXHIBIT
2

# NEELY & CALLAGHAN

*Lawyers*

159 SUMMERS STREET

CHARLESTON, WEST VIRGINIA 25301-2134

304-343-6500

FAX 304-343-6528

MICHAEL O. CALLAGHAN

September 24, 2019

*Via Certified Mail (7018 1130 0002 3182 9475)*

**D. C. Chapman Ventures, Inc.,** a West Virginia Corporation
c/o D. Craig Chapman, Statutory Agent
P.O. Box 854
Summersville, WV 26651

*Via Certified Mail (7018 1130 0002 3182 9482)*

**Brady Cline Mining Company,**
a dissolved West Virginia Business Corporation, solely to the extent of its undistributed assets, specifically including the remaining limits of its available liability coverage under liability insurance policies issued to it and its officers and directors by **Fidelity & Casualty Insurance Company**
c/o The Continental Insurance Company
(successor in interest to Fidelity & Casualty
    Insurance Company)
c/o Stacy Darcy, Statutory Agent
151 N. Franklin Street
9th Floor
Chicago, IL 606060

*Via Certified Mail (7018 1130 0002 3182 9529)*

Andrew Wheeler
Administrator
U.S. Environmental Protection Agency / Mail Code 1101A
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

*Via Certified Mail (7018 1130 0002 3182 9499)*

**Jack Cline**
201 Club Circle
Daniels, WV 25832

*Via Certified Mail (7018 1130 0002 3182 9505)*

**Robert Lee Cline**
1711 Monterey Drive
Summersville, WV 26651

*Via Certified Mail (7018 1130 0002 3182 9512)*

**B. & S. Contracting, Inc.**
a dissolved West Virginia Business Corporation, solely to the extent of its undistributed assets, specifically including the remaining limits of its available liability coverage under liability insurance policies issued to it and to its officers and directors by **Boston Old Colony Insurance Company**
c/o The Continental Insurance Company
(successor in interest to Boston Old Colony
    Insurance Company)
c/o Stacy Darcy, Statutory Agent
151 N. Franklin Street
9th Floor
Chicago, IL 606060

*Via Certified Mail (7018 1130 0002 3182 9543)*

Austin Caperton
Cabinet Secretary, West Virginia Department
    of Environmental Protection
601 57th Street SE
Charleston, WV 25304

To All Addressees
September 24, 2019
RE: **Notice of Endangerment and Conditional Notice of Intent to Commence a Federal Civil Action Pursuant to 42 U.S.C. § 6972(a)(1)(B)**
Page 2 of 18 pages

RE:   **The Real Property Described as District 3, Map 36, Parcel 6, Book-Page 390-330, and the Right Fork of Spruce Run Watershed, Both Located in Nicholas County, West Virginia**

**Notice of Endangerment and Conditional Notice of Intent to File a Federal Civil Action Pursuant to 42 U.S.C. § 6972(a)(1)(B)**

To all Addressees:

This law firm and the undersigned legal counsel represents Living Lands, LLC, a West Virginia Limited Liability Company (hereinafter: "**Claimant**"), the holder of an irrevocable option to purchase fee simple title to the real property described as District 3, Map 36, Parcel 6, Book-Page 390-330, Nicholas County, West Virginia (hereinafter: the "**Subject Property**") with respect to the solid waste and hazardous waste contamination and attendant environmental harms on, and imminent and substantial endangerments to, health and the environment, in the vicinity of, and affecting the **Subject Property**, and which have caused and are causing water loss (including impairment of the quality of the waters and their beneficial uses) of groundwater and surface water, which are located within the Right Fork of Spruce Run watershed in Nicholas County, West Virginia (hereinafter: "**Subject Watershed**").

In compliance with the requirements of Section 7002(b)(2) of the Resource Conservation and Recovery Act of 1976, as amended (hereinafter: "RCRA" or "federal Hazardous Waste Management Act"), 42 U.S.C. § 6972(b)(2), this Notice of Endangerment is issued to the following persons and entities, all of whom are hereinafter referenced as "Responsible Parties":

- D. C. Chapman Ventures, Inc., a West Virginia corporation, the current owner of fee simple title and Optionor of the **Subject Property**;
- Brady Cline Mining Company, a dissolved West Virginia corporation, solely to the extent of its undistributed assets, specifically including all available limits of liability remaining on any contracts of indemnification or policies of insurance that provide it or its officers and directors coverage with respect to the liabilities identified herein;
- B & S Contracting, Inc., a dissolved West Virginia corporation, solely to the extent of its undistributed assets, specifically including all available limits of liability remaining on any contracts of indemnification or policies of insurance that provide it or its officers and directors coverage with respect to the liabilities identified herein;

To All Addressees
September 24, 2019
RE: **Notice of Endangerment and Conditional Notice of Intent to Commence a Federal
Civil Action Pursuant to 42 U.S.C. § 6972(a)(1)(B)**
Page 3 of **18** pages

- Jack Cline, the Chief Executive Officer of Brady Cline Mining Company and a former operator of its mining facilities on the **Subject Property**;
- Robert Lee Cline, the Chief Operations Officer of Brady Cline Mining Company and the Chief Executive Officer of B & S Contracting, Inc., and a former operator of the mining facilities on the **Subject Property** of both of those companies.

A copy of this Notice of Endangerment is also being provided to each person listed on **Exhibit A** to this Notice, a copy of which is attached hereto.

Based on currently available information, this Notice of Endangerment sets forth the contributions by the Responsible Parties, each a past or present generator of solid and hazardous waste, or past or present owner or operator of a solid and hazardous waste treatment, storage, or disposal facility, whose acts or omissions have caused or contributed to current and continuing conditions, as set forth below in further detail herein, that **present or may present an imminent and substantial endangerment to health or the environment**. The undersigned counsel, at the address and telephone number set forth above and below, represents Living Lands, LLC, a West Virginia Limited Liability Company, the person giving notice.

I.    **THE RIGHT FORK OF SPRUCE RUN WATERSHED IN NICHOLAS COUNTY, WV AND THE MINING ACTIVITIES ADVERSELY AFFECTING ITS WATERS AND SEDIMENTS:**

The Right Fork of Spruce Run watershed lies entirely within Nicholas County, West Virginia, and its drainage area encompasses approximately 200 acres. The Right Fork of Spruce Run is a tributary of Spruce Run, of Brushy Fork, of Muddlety Creek, of Gauley River. **Exhibit C**, a copy of which is attached hereto and incorporated herein, is a reference map and provides information related to mining operations in the Right Fork Spruce Run Watershed.

Beginning in at least the 1960's and continuing into at least the 1990's underground coal mining operations with associated surface operations on or below the **Subject Property** were conducted within the **Subject Watershed**. Each of the following entities conducted such coal mining activities at the **Subject Property** at various times during that period:  Holly Coal Company, Brady Cline Mining Company, Rifson Coal Company, and B. S. Contracting, Inc. (hereinafter:  "**Mining Companies**").

As generally depicted on the map attached as **Exhibit 1 and 2** the **Mining Companies** operated underground mines in the Stockton coal seam on the east side of the Right Fork of Spruce Run. The **Mining Companies** ceased operations and refused to comply with their environmental and mining permits, and forfeited their posted reclamation bonds, leaving the State of WV with the task of permanently treating contaminated groundwater discharges to surface water from the Mining Companies operations.

To All Addressees
September 24, 2019
RE:  **Notice of Endangerment and Conditional Notice of Intent to Commence a Federal
Civil Action Pursuant to 42 U.S.C. § 6972(a)(1)(B)**
Page 4 of 18 pages

The present owner of fee simple title to the **Subject Property** has, and the past owners of fee simple title to the Subject Property had during the period of their ownership, the legal authority and responsibility to control the use of their property to assure:  (1) that it is not being used for illegal purposes; (2) that it is not being used to create or maintain any condition of Public Nuisance or any actual or imminently threatened endangerment of the Public Health, Safety, Welfare or the Environment.

The Responsible Parties are liable for all of the Solid Waste and Hazardous Waste contamination that has been and is being released into the environment at, and emanating into or from each of their respective operations and facilities where such contamination has come to be located, or threatens to be located, including the comingling of contaminants from multiple operations and facilities, which commingled contamination has caused or contribute to and continues to cause and contribute to a single indivisible harm or endangerment to health or the environment within the **Subject Watershed**.

Spruce Run is listed on the West Virginia Clean Water Act Section 303(d) List ("WV 303d") of "impaired waters" and has a completed Total Maximum Daily Load plan ("TMDL")[1]. Coal mining activities have caused and continue to cause impairments to the Right Fork of Spruce Run from unpermitted discharges from past mining activities in the Brady Cline Numbers 4 and 5 Mines and the Rifson Number 7 Mine.  This contaminated surface water and groundwater from these three (3) operations forms a commingled plume with groundwater and surface water, and further commingles with groundwater and surface water from Spruce Run to Muddlety Creek.  The contaminants in Right Fork Spruce Run have contributed to and continue to contribute to the significant impairments of Spruce Run and Muddlety Creek, also a WV § 303d listed "impaired stream."

In addition to the known acid mine drainage impacts to groundwater and surface water associated with mining-impacted wastewater discharges from mine portals, the **Responsible Parties** have caused and contributed to, and are causing and contributing to, other significant adverse impacts to groundwater within the **Subject Watershed**.  Most notably, ditches and ponds that have been constructed to convey or partially treat discharges are unlined; therefore, some of the solid and hazardous waste disposed of into each of those impoundments and ditches has discharged and continues to discharge into the surrounding groundwater system.  The past and ongoing disposal of Solid Wastes and Hazardous Wastes in the ditches and ponds within the **Subject Property** has resulted in and continues to result in a certainty that adverse effects on the

---

[1] A "TMDL" is the calculation of the maximum amount of a pollutant allowed to enter a waterbody so that the waterbody will meet and continue to meet legally applicable water quality standards for that particular pollutant. A TMDL determines a pollutant reduction target and allocates load reductions necessary to achieve that target to the contributing source(s) of the pollutant.

To All Addressees
September 24, 2019
RE: **Notice of Endangerment and Conditional Notice of Intent to Commence a Federal Civil Action Pursuant to 42 U.S.C. § 6972(a)(1)(B)**
Page **5** of **18** pages

environment will result from such disposal. Discharges from the impoundments and ditches into the groundwater system at and emanating from the **Subject Property** are: **(1) not** "industrial discharges which are point sources subject to regulation under Section 402 of the Federal Water Pollution Control" within the meaning of that phrase as used in RCRA § 1004(27), 42 U.S.C. § 6903(27); **(2)** are unpermitted; **(3)** are continuing to migrate through the environment; and **(4)** are directly hydraulically connected to surface water. The impoundments are within the Right Fork of Spruce Run; therefore, groundwater in contact with the waste impoundment discharges is also connected to surface water. Unpermitted discharges of waste, Solid Waste, hazardous substances and Hazardous Wastes have occurred and are occurring at and from the Mining Companies facilities and from the facilities created to treat the wastes resulting those mining facilities that included mining, processing, storage, handling, disposal, transport, use, or injection activities of waste, Solid Waste, or hazardous substances and Hazardous Wastes at or in the vicinity of the Subject Property, the Mining Companies facilities, the impoundments and ditches, and related mining activities. These unpermitted discharges have adversely impacted and continue to adversely impact groundwater, surface waters at and emanating from the site, and surface and sub-surface soils at, and in the areas adversely impacted by the discharges from, the **Subject Property**.

Claimant, on information and belief, assert that some or all of the wastes from the mining activities by Mining Companies at the **Subject Property** has been treated, stored or disposed of in the unlined impoundment and ditches on the **Subject Property**, and has been and is continuing to be discharged from those unlined impoundments and ditches to groundwater and ultimately to surface waters. The waste contains at least the following contaminants: aluminum, arsenic, cadmium, beryllium, iron, manganese, nickel, sulfate, zinc and selenium. In addition, these various contaminants have and will combine within the subsurface and surface and cause or contribute to additional adverse conditions and imminent and substantial endangerments to the environment, including soil, groundwater, and surface waters with the **Subject Watershed**.

The mined coal seams continue to be a source of contaminants in the watershed. It is through the mined coal seams and mining activities by the Mining Companies that mining waste, solid waste, and hazardous waste has been further exposed to air and water at the mining facilities, which exposure caused or contributed to the disruption in the geological and hydrologic balance within the **Subject Watershed**. These disruptions in the geological and hydrologic balance within the environment from the mining activities causes or contributes to the comingling of materials and oxidation of materials to create acid mine drainage and the release and disposal of contaminants into the Right Fork Spruce Run and Spruce Run Watersheds. Contaminated groundwater originates in the altered environmental conditions in the coal seams and migrates through the seams and adjacent rock layers and into the groundwaters and surface waters of the Right Fork Spruce Run Watershed. These altered pathways and waste materials are freed to comingle and to further cause and contribute to the environmental degradation at and migrating from the mining facilities in the groundwater and surface run-offs of various contaminants

To All Addressees
September 24, 2019
RE:  **Notice of Endangerment and Conditional Notice of Intent to Commence a Federal Civil Action Pursuant to 42 U.S.C. § 6972(a)(1)(B)**
Page 6 of **18** pages

identified within this Notice.  Additionally, the material that was removed from the coal seams and discarded as waste material or solid waste also caused the release of and continues to contribute contaminants to the Watershed from waste piles, stockpiled waste rock and tailings, contaminated soils, impoundments, and improperly closed or abandoned mining facilities.

Additionally, groundwater seeps were sampled at the Mining Companies discharges from their closed portals in May, 2018 by environmental consultants for Claimant.  These data indicate that groundwater in the Right Fork Spruce Run Watershed is contaminated at least by arsenic, beryllium, cadmium, iron, antimony, manganese, selenium, sulfate and aluminum.

## II.    THE ADVERSE EFFECTS AND RESULTNG ENDANGERMENT TO HEALTH AND THE ENVIRONMENT WITHIN THE SPRUCE RUN WATERSHED FROM THE MINING OPERATIONS

The operations of the Responsible Parties have caused and contributed to and is continuing to cause and contribute to conditions within the Right Fork Spruce Run Watershed that have and will continue to threaten and endanger human health and the environment, including the following, as further detailed within this Notice:  **A)** Impairment to the Beneficial Uses of Groundwater and Surface Water Impairment; **B)** On-going Acid Mining Drainage at and emanating from the Site into Publicly-owned Groundwater and Surface Waters; **C)** Surface Waste and Mining Tailing Piles and Hydrogeology Pathways Within the **Subject Watershed, D)** Continuing Endangerment of Bioaccumulation of Toxic Contaminants Caused by Mining Operations within the **Subject Watershed, E)** Interference with Recreational, Aesthetic, and Economical Value and Purposes Within Right Fork of Spruce Run Watershed, and **F)** Additional Chemicals of Concern within Spruce Run Watershed from Mining Operations by Responsible Parties.  These endangerments and adverse impacts to human health and the environment overlap and interact to further cause and contribute to the threats and endangerments at and emanating from the Responsible Parties' facilities.

### A.    Groundwater and Surface Water Impairment within the Subject Watershed:

The operations of the Responsible Parties have caused and contributed to, and are continuing to cause and contribute to, the solid and hazardous waste contamination described in this Notice of the groundwater within the **Subject Watershed** and the streams to which these groundwater resources are hydraulically connected.  Groundwater within the Subject Watershed is a "underground drinking water source" within the meaning of that term in 40 C.F.R. § 257.3-4 because it is an aquifer in which the ground water contains less than 10,000 mg/l total dissolved solids.  Additionally, this contamination has comingled within and caused degradation of surface waters and sediment to the point that they can no longer meet their designated uses under the Clean Water Act and appear within the Gauley River TMDL.  Documented impairments from mining

To All Addressees
September 24, 2019
RE:  **Notice of Endangerment and Conditional Notice of Intent to Commence a Federal Civil Action Pursuant to 42 U.S.C. § 6972(a)(1)(B)**
Page 7 of 18 pages

activities are related to numeric water quality criteria for total iron, dissolved aluminum, and pH. (*WVDEP 2008 Total Maximum Daily Loads for Streams in the Gauley River Watershed, West Virginia, Muddlety Creek Appendix*).  The streams suffering these adverse impacts from mining operations include all of the Spruce Run watershed, including Right Fork of Spruce Run.

**B.**    Acid Mine Drainage and Its Adverse Impacts within the Subject Watershed:

Both surface and subsurface mining disturb the hydrogeological environment in much the same way - especially by changing hydraulic conductivity, secondary porosity, vertical connectivity, and geochemistry.  These mining activities and facilities cause and contribute to the release and discharge of the contaminants into the environment which leads to acid-mine drainage conditions at and emanating from the historical, current, and improperly abandoned and closed mining facilities both on the surface and underground.  Acid mine drainage contains increased acidity, iron, manganese, aluminum, iron hydroxide, sulfuric acid, and numerous inorganic contaminants which destroy plant and animal life.

Mining activities and the conduct of the Responsible Parties increased aeration within the layers in and around the mined seams.  This aeration in effect jump-started and accelerated the oxidation of iron and sulfur minerals through chemical and biological processes.  While normally stable, sulfide and iron minerals are oxidized by microorganisms at reaction rates several orders of magnitude greater than non-biologically mediated processes.  Thus, while many of the elements required for oxidation of these minerals have been present since these layers were originally laid down, the introduction of air and more water into the subsurface through this mining greatly increased the rates at which these minerals are oxidized and are dissolved in groundwater by stimulating biological activity that continues to this day.  Additionally, disposal practices by the Responsible Parties similarly increase the rates at which these contaminants are introduced into the environment.  Mining activities and other conduct by the Responsible Parties created conditions by which it remains a significant source of contaminants in the Right Fork Spruce Run Watershed.

Additionally, fracture zones associated with heaving of mine floors and roof falls contribute to vertical fracturing, thereby connecting strata vertically from below the lowest mine works to the surface and greatly increasing secondary porosity in the mined area.  From a water-supply standpoint, this fracturing dramatically changed the natural hydrogeologic system (flow of water within the environment) – from what was once a system dominated by shallow local aquifers defined by local topography to one in which vertical and horizontal connectivity that is vastly increased.  The increase in fracturing and vertical and horizontal preferential pathways also contributed to significant changes in local geochemistry, increased porosity, changes in groundwater flows and volumes, and increased contact area between solutes and solvents (water).

To All Addressees
September 24, 2019
RE: **Notice of Endangerment and Conditional Notice of Intent to Commence a Federal
Civil Action Pursuant to 42 U.S.C. § 6972(a)(1)(B)**
Page 8 of 18 pages

Mining activity and other conduct by the Responsible Parties increased the connectivity of water contaminated by their activities to the surrounding groundwater and surface water environment.

### C.  Surface Waste and Mining Tailing Piles and Hydrogeology Pathways within the Right Fork Spruce Run Watershed:

The mining of coal and the handling and disposal of associated coal mineral wastes greatly increases the rate and quantity at which these contaminants are released to environmental media, particularly sediment, surface water, and groundwater within the **Subject Watershed**. What has been "locked-up" for millions of years is released from the parent material in a geologic instant. The underground environment in this mined region is complex in relation to geochemistry and hydrogeology. Groundwater flows will respond to pumping rates and the hydrologic cycle differently than that of undisturbed areas, generally allowing more and quicker water and contaminant flows. The Responsible Parties' mining activities have also caused and contributed to, and are continuing to cause and contribute to, the changing oxidation conditions in the subsurface–causing or contributing to significant fluctuations in contaminant chemistry, fate and transport of the waste, solid waste, pollution, and contamination within the **Subject Watershed**. Further, the mining waste, stockpiles, and mine tailings that have been left on the surface are now exposed to rain and other weathering conditions which further cause and contribute to the surface water and groundwater contamination.

Barring other influences, the flow of this contaminated water would be expected to follow natural gradients. As the above-drainage mines in this watershed are in the Stockton coal seam, the natural gradients for contaminated groundwater would be into the surface water and valley floor groundwater systems and stream beds in the Right Fork Spruce Run Watershed. At the hillside/valley floor interface, contaminants from individual mines will commingle with contaminants introduced from any upgradient or adjacent mines, creating a single indivisible plume in the valley floor sediments, groundwater, and surface water system.

These mining activities have caused, contributed to, and resulted in comingled plumes of contaminants in the local groundwater system and in the surface waters and sediments within the **Subject Watershed**. Documents and information currently demonstrate that these mining operations increased contaminant concentrations in groundwater and surface water and sediments. It appears that at various times from at least the 1970s to present, the owners and operators of the Mining Companies and other Responsible Parties caused or contributed to the past or present handling, storage, treatment, transportation, or disposal of Hazardous Wastes,[2] and/or Solid

---

[2] As used herein, the term "Hazardous Waste" has the same definition as that provided in RCRA§ 1004(5), 42 U.S.C. § 6903(5), to wit:

To All Addressees
September 24, 2019
RE:  **Notice of Endangerment and Conditional Notice of Intent to Commence a Federal
       Civil Action Pursuant to 42 U.S.C. § 6972(a)(1)(B)**
Page 9 of 18 pages


Wastes,[3] including iron, manganese, aluminum, sulfate, arsenic, cadmium, nickel, beryllium, zinc
and selenium in the environment at and emanating from the mining operations.

These activities have resulted in harm and present and may present endangerments to health
and the environment that is substantial and ongoing.  However, the full nature and extent of the
contamination and impact from these operations is not entirely known.  Fully defining the impact
of these operations will require a full and complete remedial investigation.  This investigation will
likely identify additional contaminants of concern or a combination of contaminants of concern.
The harms and endangerments can be addressed by well-understood remedial technologies.  This
Notice hereby requests that the Responsible Parties, jointly and severally, undertake in a timely
and competent manner a complete Remedial Investigation in full compliance with the applicable
provisions of the National Oil and Hazardous Substances Pollution Contingency Plan (hereinafter:

---

[A] solid waste, or combination of solid wastes, which because of its quantity,
concentration, or physical, chemical, or infectious characteristics may—
> (A) cause, or significantly contribute to an increase in mortality or an increase in
> serious irreversible, or incapacitating reversible, illness; or
> (B) pose a substantial present or potential hazard to human health or the
> environment when improperly treated, stored, transported, or disposed of, or
> otherwise managed.

**Id.** [Bolding emphasis added]  For purposes of RCRA's "citizen suit" provision, 42 U.S.C. § 6972, the
term "hazardous waste" is <u>not</u> limited to (though it necessarily includes) the administratively defined
subset of hazardous wastes which Congress directed to be identified or listed by the Administrator of
USEPA under RCRA Subtitle C, *see* 42 U.S.C. § 6922(a), or which meet such similar criteria under the
West Virginia hazardous waste program. *See* West Virginia Code § 22-18-6(a)(2); *Cordiano v. Metacon
Gun Club, Inc.*, 575 F.3d 199, 205-06 (2nd Cir. CT 2009); Adam Babich, "RCRA Imminent Hazard
Authority: A Powerful Tool for Businesses, Governments, and Citizen Enforcers," 24 ELR 10122 (1994)
("Where the statutory language of RCRA simply refers to 'hazardous wastes' rather than to 'hazardous
waste identified or listed under this subchapter' (*i.e.*, RCRA Subtitle C), the statute refers directly to the
broader set of wastes meeting the governing statutory definition of hazardous wastes, rather than those
which meet the criteria of being listed or characteristic hazardous wastes.").

[3]  As used herein, the term "Solid Waste" has the same definition as that provided in in
42 U.S.C. § 6903(27), that provides, in relevant part:

[A]ny garbage, refuse, sludge from a waste treatment plant, water supply treatment plant,
or air pollution control facility and other discarded material, including solid, liquid,
semisolid, or contained gaseous material resulting from industrial, commercial, **mining**,
and agricultural operations, and from community activities. . . .

**Id.** [Bolding emphasis added]. The term "solid waste" is not, for purposes of RCRA's "citizen suit"
provision, 42 U.S.C. § 6972, limited to the narrower *regulatory* definition of solid waste set forth in 40
CFR Part 261, which regulations were promulgated solely for purposes of implementing Subtitle C of
RCRA.  C.F.R. § 261.1(b)(1); *Cordiano v. Metacon Gun Club, Inc.*, *supra*.

To All Addressees
September 24, 2019
RE: **Notice of Endangerment and Conditional Notice of Intent to Commence a Federal**
      **Civil Action Pursuant to 42 U.S.C. § 6972(a)(1)(B)**
Page 10 of 18 pages

"NCP" or "National Contingency Plan"), 40 C.F.R., Part 300, with respect to the **Subject Watershed** to define the full nature and extent of the contamination caused and contributed to by their contributions as described herein within the watershed, to identify those contaminants that are adversely impacting or that may present endangerments to human health or the environment, and to remediate, if and as appropriate, such contamination that presents or may present an imminent and substantial endangerment to health or the environment to which they have contributed, as identified herein.

Mining activities in the **Subject Watershed** by the Responsible Parties were conducted above drainage (*i.e.*, up-gradient) in the Stockton coal seam, mining of which is notorious for contaminating groundwater and surface waters with toxic pollutants if appropriate controls are not utilized and/or mining wastes are disposed above drainage. This mining activity created mine and mine waste drainage which continues to this day, increasing the concentrations of toxic substances in groundwater and subsequently the surface waters to which they are connected or in which such contaminants continue to migrate within the environment. This contaminant generation occurs in both the mined seams and in the waste material disposed of within or adjacent to these mining operations. Seepage of contaminants and contaminated groundwater continue to flow into surface waters in areas in which the Mining Companies operated. These discharges commingle with similarly contaminated groundwater from other mining operations in the adjacent (Spruce Run) valley aquifer and surface streams, forming a single surface water and groundwater plume and sediment plume. Mining activities by the Responsible Parties contaminated and continue to contaminate groundwater and surface water in the **Subject Watershed** and the Spruce Run watersheds.

Groundwater contaminated from mining activities and solid and hazardous wastes disposed of in and around underground coal mines does not remain sealed in those mined areas or abandoned mine works but has and will continue to migrate away from those areas due to long-recognized hydrogeologic features of mining-impacted regions. Additionally, coal and coal waste contain a plethora of organic and inorganic compounds that will certainly be a part of that migrating waste. This impact from the Mining Companies' activities is cumulative and comingled with other mining impacts from similar operations.

Surface water impacts are described in part in the West Virginia Department of Environmental Protection's ("WVDEP") *2008 Total Maximum Daily Loads for Streams in the Gauley River Watershed, West Virginia*. All of these contaminants are the result of mining activities by the Responsible Parties within the watershed, especially mining impacts to groundwater that is hydrologically connected to surface water.

When contaminated groundwater from these mining activities is discharged or flows into streams or infiltrates into rock formations that are in communication with perched aquifers, these

To All Addressees
September 24, 2019
RE: **Notice of Endangerment and Conditional Notice of Intent to Commence a Federal
Civil Action Pursuant to 42 U.S.C. § 6972(a)(1)(B)**
Page 11 of 18 pages

discharges will subsequently report to seeps and springs. Seeps and springs are affected by abandoned underground mines in the **Subject Watershed**. The underground voids left after removing the coal have resulted in a change in flow and quality of groundwater within the mine openings and the collection of water within these mines, thus increasing the interaction between the various contaminants, increasing the head (pressure) of the water, and the collective ability of these contaminants to adversely impact and flow or seep into groundwater and surface waters within the watershed. Water flowing through these voids continues to dissolve chemicals in the exposed surfaces of the void. This water is contaminated by the Mining Companies' releases and discharges to the surface in the form of a spring or seep, or as flow at the groundwater/surface water interface.

Mining activity discharges by the Responsible Parties, and their respective predecessors and successors, and abandoned mines and past mining activities have caused impairments to or contributed to impairments of the Right Fork of Spruce Run and have commingled within the Right Fork of Spruce Run groundwater, surface water system, and sediments within the Right Fork Spruce Run Watershed. This contaminated surface water and groundwater and sediments form a commingled plume with groundwater and surface water from the Right Fork Spruce Run to the main stem of Spruce Run, which is a tributary of Brushy Fork and the related sediments within the Spruce Run Watershed. The contaminants in Right Fork Spruce Run caused or contribute to the impairments of Spruce Run, Brushy Fork, and Muddlety Creek, also WV 303d listed or TMDL impaired streams.

The Mining Company's individual owners and operators are responsible for releasing, discharging, creating, maintaining, and leaving in place environmental conditions that pose or may pose an imminent and substantial endangerment to public health and the environment. As an owner or operator of operating mining company in the **Subject Watershed**, the Mining Companies caused or contributed to the contamination that is located at and emanating from the watershed by handling, discarding, discharging, spilling, or releasing multiple solid and hazardous waste contaminants, intentionally, suddenly and accidentally, negligently, or otherwise, so that the contaminants entered the environment. These contaminants are continuing to migrate in the environment, causing and contributing to property damage, water loss, and appreciable harm to the groundwater, surface water, and sediments. Moreover, the presence of these contaminants present or may present an imminent and substantial endangerment to health or the environment, including the surface and sub-surface soils, groundwater aquifers, and natural resources.

D.     **Continuing Endangerment of Bioaccumulation of Toxic Contaminants
Caused by Mining Operations within Spruce Run Watershed:**

In addition to the endangerments and adverse impacts to the environment set forth above, the endangerments from these mining activities includes loss and continued degradations of

To All Addressees
September 24, 2019
RE: **Notice of Endangerment and Conditional Notice of Intent to Commence a Federal
Civil Action Pursuant to 42 U.S.C. § 6972(a)(1)(B)**
Page 12 of 18 pages

biodiversity in the receiving stream, and contamination of sediments, soil, groundwater, and surface water by contaminants released or discharged by these mining activities that generated, used, handled, transported, stored, discharged, or released the waste, solid waste, toxic substances, hazardous substances, or hazardous materials that have harmed and will continue to harm the environment, create and continue to create a threat to human health and the environment, and unabated will continue to migrate within the environment. Contaminants in the watershed are easily absorbed by fish and other aquatic organisms. Small concentrations can be toxic because some contaminants bioconcentrate or bioaccumulate. Toxicity also produces adverse biological effects on an organism's survival, activity, growth, metabolism, or reproduction. Contaminants can be lethal or harm the organism without killing it directly. Adverse effects on an organism's activity, growth, metabolism, and reproduction are examples of these sublethal effects. Some of the contaminants of concern are also bioaccumulated within the plants and animals that are in direct or indirect contact with the food chain and adversely impact the health of these organisms and organisms that feed upon those organisms.

This mining activity caused acid mine drainage that continues to this day, increasing the concentrations of toxic substances in groundwater and subsequently to the surface waters to which they are connected, namely Right Fork of Spruce Run and Spruce Run, and to the sediments within the Spruce Run Watershed. As a result of this contamination, this contaminated groundwater poses an endangerment to human health and the environment. Additionally, this contamination has contributed to degradation of surface waters to the point that they can no longer meet their designated uses under the Clean Water Act and appear on the WV 303d list or within a TMDL of impaired waters. Documented impairments from mining activities are related to numeric water quality criteria for total iron, dissolved aluminum, and pH.

WVDEP has established that these watersheds are already impaired. Such adverse impacts will continue without a complete investigation and remediation of the coal mining contamination at and migrating within the Right Fork Spruce Run Watershed. Current and known surface water impacts are partially described in part in WVDEPs 2008 Total Maximum Daily Loads for Streams in the Gauley River Watershed, West Virginia. All of these contaminants are the result of mining activities. The **Subject Watershed** has clearly been adversely impacted, and this impact contributes to the known degradation of Spruce Run, Brushy Fork, and Muddlety Creek, the streams into which Right Fork Spruce Run flows.

E.     <u>Interference with Recreational and Aesthetic Purposes within Spruce Run
Watershed</u>:

Besides creating environmental damage, the contamination resulting from these activities results in the endangerment to the health of the local population. The greater Gauley River Watershed, of which Right Fork Spruce Run is a part, is popular for recreational and aesthetic

To All Addressees
September 24, 2019
RE: **Notice of Endangerment and Conditional Notice of Intent to Commence a Federal Civil Action Pursuant to 42 U.S.C. § 6972(a)(1)(B)**
Page 13 of 18 pages

purposes, including but not limited to boating, swimming, fishing, hunting, and sightseeing. The greater watershed includes the Summersville Lake, a popular recreational area for these activities. Impacts from mining have rendered the Right Fork Spruce Run unsuitable for these activities, and threaten these uses in The Gauley Watershed.

In addition to these known and possible adverse impacts to human health and the environment, the degradation of streams and subsequent 303(d) and/or TMDL listing as such may hamper or adversely affect future economic development within the Watershed.

If left unabated, these adverse impacts will not only continue, but will further degrade the Right Fork Spruce Run Watershed and will also degrade the Spruce Run, Brushy Fork, and Muddlety Creek watersheds.

F.     **Additional Chemicals of Concern Resulting from the Responsible Parties' Mining Operations within Spruce Run Watershed:**

Although the full nature, extent, and impact of the contamination caused by the operations of the Mining Companies is not entirely known, some of the known contaminants of concern in the environment within the Spruce Run Watershed, including those contaminants identified above, are the following:

**Iron:**

Impairments documented by WVDEP to surface water from mining activities are related to numeric water quality criteria for total iron. These impairments are related to protection of both human health and aquatic life. Precipitation of ferric hydroxide may result in a complete blanketing of the stream bottom, adversely affecting both macroinvertebrates and fish. Because the gill surface of the fish tends to be alkaline, soluble ferrous iron can be oxidized to insoluble ferric compounds which then cover the gill lamellae and inhibit respiration. At a low water temperature and in the presence of iron, iron-depositing bacteria will multiply rapidly on the gills and further contribute to the oxidation of ferrous iron compounds. Their filamentous colonies cover the gills. The precipitated iron compounds and tufts of the iron bacteria reduce the gill area available for respiration, damage the respiratory epithelium, and may thus suffocate the fish. In a similar toxic action, iron compounds can precipitate on the surface of fish eggs which then die due to a lack of oxygen.

**Manganese:**

Manganese is another metal that is widely distributed in mine drainage. It can be present in a variety of forms and compounds and complexes with organic compounds. Manganese is persistent and can be carried for long distances downstream of a source of mine drainage. Manganese precipitates along with siltation significantly lowering macroinvertebrate species diversity and

To All Addressees
September 24, 2019
RE: **Notice of Endangerment and Conditional Notice of Intent to Commence a Federal Civil Action Pursuant to 42 U.S.C. § 6972(a)(1)(B)**
Page 14 of 18 pages

changing stream community structure. Manganese is an essential trace element in humans that can elicit a variety of serious toxic responses upon prolonged exposure to elevated concentrations either orally or by inhalation. The central nervous system is the primary target. Because of the greater bioavailability of manganese from water, a chronic and subchronic Reference Dose ("RfD") for drinking water of 0.005 mg/kg/day has been calculated by EPA.

**pH:**
Aquatic life is adapted to the natural pH levels in their bodies of water, and even slight changes in pH can have negative impacts on the health of the aquatic community. Moderate changes in pH can affect fish egg production, fish and insect gills, and amphibian populations. A change in the pH of water can alter the behavior of other chemicals in the water, and many heavy metals dissolve in acidic water. Most freshwater streams have a natural pH in the range of 6 to 8. Acid deposition has many harmful ecological effects when the pH of most aquatic systems falls below 6 and especially below 5.

**Aluminum:**
Documented impairments from WVDEP to surface water from mining activities are related to numeric water quality criteria for aluminum. These impairments are related to protection of aquatic life. Of the three major metals present in mine drainage, aluminum has the most severe adverse effects on stream aquatic life. Elevated levels of aluminum can affect some species' ability to regulate ions, like salts, and inhibit respiratory functions, like breathing. Aluminum can accumulate on the surface of a fish's gill, leading to respiratory dysfunction, and possibly death. Aluminum rarely occurs naturally in water at detectable concentrations; however, higher concentrations can occur as a result of drainage from coal mining. The finding of a significant positive relationship between drinking water aluminum levels and the development of Alzheimer's disease in a recent large prospective study, together with the finding of a positive relationship in a number of less methodologically sound studies, suggests that the association between aluminum and Alzheimer's disease should be further investigated.

**Sulfate:**
Sulfate is an indicator of mining impacts to surface waters. USGS reports background concentrations in WV streams to be less than 25 mg/L. Streams in this watershed are much higher, and data indicates sulfate concentrations exceed the level WVDEP considers a likely stressor to aquatic life.

**Arsenic**
Arsenic has been linked to a number of cancers. These include cancer of the bladder, lungs, skin, kidney, nasal passages, liver, and prostate. EPA set the arsenic standard for drinking water at 10 ppb (or 0.010 parts per million). Arsenic is a teratogen and carcinogen that can traverse placental barriers and produce fetal death and malformations in many species of mammals. Many species

To All Addressees
September 24, 2019
RE:  **Notice of Endangerment and Conditional Notice of Intent to Commence a Federal
Civil Action Pursuant to 42 U.S.C. § 6972(a)(1)(B)**
Page 15 of 18 pages

of freshwater biota are adversely affected by high concentrations of arsenic or various organ arsenicals.  These adverse effects include death and malformations of toad embryos, growth inhibition of algae, mortality of amphipods and gastropods, and behavioral impairment of goldfish.

**Cadmium:**
Cadmium has been detected in water wells in the watershed.  USEPA finds that cadmium is highly persistent in water, has a high potential for bioaccumulation in fish and other aquatic organisms, and is persistent in many tissues, including muscle, liver and kidney.  In humans, long term exposure may result in damage to blood, bones, kidneys and liver. Cadmium effects on aquatic organisms are analogous to those in humans, and include skeletal deformities and impaired functioning of kidneys in fish.

**Selenium:**
Selenium has been found in wells and in surface water in the watershed.  Selenium bioaccumulates in the aquatic food chain and chronic exposure in fish and aquatic invertebrates can cause reproductive impairments (e.g., larval deformity or mortality). Selenium can also adversely affect juvenile growth and mortality.  Selenium is also toxic to water fowl and other birds that consume aquatic organisms containing excessive levels of selenium.  Selenium is toxic to humans at high concentrations, with symptoms of selenium poisoning including gastrointestinal disturbances, discoloration of the skin and decayed teeth.

**Beryllium:**
The available data for beryllium indicate that acute and chronic toxicity to freshwater aquatic life occur at concentrations as low as 130 and 5.3 ug/l, respectively, and would occur at lower concentrations among species that are more sensitive than those tested.  Hardness has a substantial effect on acute toxicity.

**Nickel:**
Nickel is listed by the EPA as one of 129 priority pollutants.  Study results indicate that nickel is a developmental toxicant in animals.  Several physico-chemical factors of water are known that modify nickel toxicity to fish.  Acute lethality of nickel increases with decreasing water pH.

In addition to those contaminants now known to exist in the environmental media in and surrounding Right Fork Spruce Run or which have been found in sampling of media in or effecting the Right Fork Spruce Run Watershed, the parties providing this notice believe, based on the mining methods and procedures employed by the Mining Companies, that the following additional contaminants will likely or could potentially be found in the groundwater and surface waters and sediments of the Spruce Run watershed:

| Acidity | BOD | Calcium |
|---------|-----|---------|

To All Addressees
September 24, 2019
RE: Notice of Endangerment and Conditional Notice of Intent to Commence a Federal
    Civil Action Pursuant to 42 U.S.C. § 6972(a)(1)(B)
Page 16 of 18 pages


| | | |
|---|---|---|
| Chloride | Toluene | Barium |
| COD | Ethylbenzene | Boron |
| Magnesium | Xylene | Chromium |
| Nitrate | Cumene (Isopropyl | Copper |
| Nitrite | Benzene) | Cyanide |
| Potassium | Ethylene Glycol | Fluoride |
| Sodium | Benzo[a]pyrene | Mercury |
| Specific Conductivity | Phenols | Silver |
| Total Dissolved Solids | (TPH) GRO, DRO, and | Thallium |
| Total Suspended Solids | ORO | Zinc |
| Acrylamide | TOC | |
| Benzene | Vinyl Chloride | |

Simply stated, the various waste, Solid Waste, Hazardous Wastes, and hazardous substances used, stored, handled, generated, stored, and transported by the Mining Companies within the Right Fork Spruce Run Watershed have mixed and combined within and during the mining operations, the mining operations' waste stream, or within the environment and have caused and will continue cause harm to or threaten human health and the environment until the released and discharged contaminants have been investigated and abated. Thus, the contamination from the Responsible Parties' operations and the resulting presence, concentration, location, discharge, release and distribution of these contaminants in the environment constitutes an imminent and substantial endangerment under RCRA. Accordingly, an NCP-compliant investigation and remediation process must be performed by the Responsible Parties in order to secure adequate protection of the Public Health, Safety, Welfare and the Environment with respect to the hazardous wastes and hazardous substances contamination and the actual and potential imminent and substantial endangerments to health and the environment within or emanating from the **Subject Watershed** and emanating from their respective facilities and the areas in which those contaminants have commingled and are commingling to form a single indivisible harm to health and environment for which no reasonable basis of apportionment to the individual Responsible Parties or the individual contributions exists.


## III.   PERSONS GIVING NOTICE

The full name, principal office address, mailing address and telephone number of the person giving this notice is:

Living Lands, LLC
Principal Office Address: 1000 5th Avenue
                          Suite 100
                          Huntington, WV 25701

To All Addressees
September 24, 2019
RE: **Notice of Endangerment and Conditional Notice of Intent to Commence a Federal**
       **Civil Action Pursuant to 42 U.S.C. § 6972(a)(1)(B)**
Page 17 of 18 pages

Mailing Address:  117 State Road 34, # 7040
Hurricane, WV  25526
Telephone:  304-397-0136

The name, address and telephone number of legal counsel representing the person giving the notice is:

Michael O. Callaghan, Esq.
NEELY & CALLAGHAN
159 Summers Street
Charleston, WV 25301
Telephone:  304-343-6500
Facsimile:  304-343-6528
E-Mail:  mcallaghan@neelycallaghan.com

### A.    CLAIMANTS' INTENTION TO FILE SUIT:

Claimant demands that the **Responsible Parties**, jointly and severally, forthwith take all actions required competently and timely to respond  to:  **(1)** the hazardous substances that have been released and discharged into the environment at or emanating from the Site; and **(2)** the imminent and substantial endangerments to health or the environment that are and that may be presented resulting, in whole or in part, from the contributions, as identified herein, of each Responsible Party.  The investigation and cleanup actions taken must be sufficient to investigate and abate the full extent of the imminent and substantial endangerment, or threatened imminent and substantial endangerment, to human health or the environment described herein to appropriate levels that are adequately protective of the Public Health, Safety, Welfare and the Environment. If the Responsible Parties, or any one of the them, fail timely and appropriately to respond, and neither the United States nor the State of West Virginia timely commence or undertakes one or more of the acts or actions described in RCRA § 7002(b)(2)(B) or (C),  Claimant intend to commence a civil action, pursuant to RCRA, compelling one or all of the Responsible Parties to investigate and remediate, as determined appropriate by the Court, the releases and discharges of hazardous substances into the environment and all imminent and substantial endangerments to health and the environment that are or may be presented resulting, in whole or in any substantial part, from the contributions of the Responsible Parties to the management of solid wastes and hazardous wastes at and emanating from the Site identified herein.

### B.    OBLIGATION TO PRESERVE EVIDENCE:

Pursuant to applicable federal law, you have a duty to preserve all evidence, including electronically stored information, that may be relevant to: **(A)** contracts of indemnification or policies of insurance that may provide coverage with the matters or liabilities identified herein; **(B)** corporate records ; **(C)** ownership or operations of the mining operations including all leases

To All Addressees
September 24, 2019
RE:  **Notice of Endangerment and Conditional Notice of Intent to Commence a Federal
Civil Action Pursuant to 42 U.S.C. § 6972(a)(1)(B)**
Page 18 of 18 pages

of the property; **(D)** contracts relating to the companies' operations and ownership and finances; **(E)** employees and vendors relating to the operations and the business; and **(F)** any other information that relates or potentially relates to the alleged contamination at and emanating from the property, facility, or directly or indirectly related general practices by any Responsible Party.

### C.  TIME TO ABATE AND SETTLE:

Please contact counsel for Claimants to discuss the content of this letter at your earliest convenience. We are hopeful that this matter can be resolved without any need for new or additional litigation.  If litigation becomes necessary, or continues, however, Claimants will pursue reimbursement for all investigation and cleanup costs incurred, including attorneys' fees and litigation costs, as well as other damages and remedies allowed under applicable laws.

Sincerely,

Michael O. Callaghan

cc:   William Barr, Attorney General of the United States of America
      Patrick Morrisey, Attorney General of the State of West Virginia
      Andrew Wheeler, Administrator
          U.S. Environmental Protection Agency
      Cosmo Servidio, Regional Administrator for Region Three, U.S. Environmental Protection
          Agency
      Austin Caperton, Cabinet Secretary West Virginia Department of Environmental
          Protection and on behalf of the Vacant Director, Water and Waste Management

EXHIBITS ATTACHED:
      EXHIBIT 1:  List of Individuals Copied
      EXHIBIT 2:  Location of Brady Cline No 4
      EXHIBIT 3:  Location of Rifson No 7 and Brady Cline No 5

Page 18 of 18 pages

# EXHIBIT 1
## Recipients of Copy of Notice of Endangerment

*Via Certified Mail (7018 1130 0002 3182 9529)*

Andrew Wheeler
Administrator
U.S. Environmental Protection Agency / Mail Code 1101A
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

*Via Certified Mail (7018 1130 0002 3182 9536)*

Cosmo Servidio,
Regional Administrator for Region Three, U.S. Environmental Protection Agency
1650 Arch Street
Philadelphia, PA 19103

*Via Certified Mail (7018 1130 0002 3182 9543)*

Austin Caperton
Cabinet Secretary, West Virginia Department of Environmental Protection,
on behalf of the Vacant Director, Water and Waste Management
601 57th Street SE
Charleston, WV 25304

*Via Certified Mail (7018 1130 0002 3182 9550)*

William P. Barr,
Attorney General, United States of America
950 Pennsylvania Ave NW
Washington, DC 20530

*Via Certified Mail (7018 1130 0002 3182 9567)*

Patrick Morrisey,
Attorney General, West Virginia
State Capitol Complex, Bldg 1, Room E-26
Charleston, WV 25305



EXHIBIT
1

## Underground and Surface Coal Mines

Zoom in and click on mine online to get further information.

Underground Mine

Mine ID: 3542468
Map Document: 354345
Mine Name: BRADY CLINE NO 4
Company Name: BRADY CLINE COAL
Map Year: 1982
Seam: Stockton
Other: Company Listings

Zoom to

**Right Fork Spruce Run**

West Virginia Geological and Economic Survey, Coal Bed Mapping Program | WVGES

Basemap

EXHIBIT

2

**Underground Mine**

Mine ID: 364348A
Map Document: 364348
Mine Name: RIFSON NO 7 & 7F
CLINE NO 5
Company Name: RIFSON COAL
Map Year: 1982
Seam: Stockton
Other Company Listings

Zoom to

Mine Rd

Hookersville Rd

Mountaineer Expy

Spruce Run Rd

Spruce Run Rd

Gulf Fork

Spruce Run Rd

Spencer Dr

Lazy Ln

Spruce Run Rd

Lower Spruce Rd

Spruce Run Rd

Zipcode, Address or Place

**EXHIBIT**
3