IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

LIVING LANDS, LLC,
a West Virginia Limited Liability Company,
D. C. CHAPMAN VENTURES, INC.
a West Virginia Business Corporation,

        Plaintiffs,

v.                                   CIVIL ACTION NO.   3:20-0275

JACK CLINE,
an Individual West Virginia Resident;
BRADY CLINE COAL CO.,
a dissolved West Virginia Business Corporation,
solely to the extent of its undistributed assets,
specifically including the remaining limits of its
available liability coverage under liability insurance
policies covering it and its officers and directors;
SPRUCE RUN COAL COMPANY,
a dissolved West Virginia Business Corporation,
solely to the extent of its undistributed assets,
specifically including the remaining limits of its
available liability coverage under liability insurance
policies covering it and its officers and directors;
HAROLD WARD,
in his official capacity as the Cabinet Secretary of the
West Virginia Department of Environmental Protection,
an instrumentality of the State of West Virginia,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Harold Ward's Motion to Dismiss. ECF No. 44. For

the following reasons, this Motion is **DENIED, in part,** and **GRANTED, in part**. ECF No. 44.

**BACKGROUND**

Plaintiff Living Lands, LLC's (Plaintiff) brings claims against Defendant Harold Ward

(WV DEP) with respect to the activities relating to the Subject Property. The Subject Property at issue is a piece of real property located within the Right Fork Spruce Run Watershed in Nicholas County, WV (the Subject Watershed) that is described as the Spruce Run Coal Company Land. *Am. Compl.*, ECF No. 41, ¶ 1. This site housed underground coal mining and related above-ground mining operations. *Id.* Defendants Jack Cline, Brady Cline Coal Co., and Spruce Run Coal Co. were each former operators of the coal mining facilities at the Subject Property. *Id.* ¶ 2. When these Defendants ceased operations and either failed or refused to comply with the environmental and mining permits, and forfeited their reclamation bonds, the State of West Virginia was tasked with "reclaiming the site and permanently treating the contaminated discharges to surface water." *Id.* ¶ 31. Thus, for many years, WV DEP has conducted on-going "reclamation" activities at the Property. *Id.* ¶ 1.

Plaintiff's claims against WV DEP relate to these "reclamation" activities. Specifically, Plaintiff alleges that, through acts and omissions of WV DEP's handling and disposal of solid and hazardous waste at the Subject Property, WV DEP has

> (i)     caused and contributed to the release of toxic, noxious, harmful and hazardous contaminants into the subsurface soils, groundwater and surface waters of the Subject Watershed, which toxic contaminants have become present and threaten to become further present at, on, under, and emanating from the Subject Property and throughout the Subject Watershed downgradient of the Subject Property, a condition that presents or pay present an imminent and substantial endangerment to health or the environment;

> (ii)    in violation of applicable federal and West Virginia statutes, created and operated, with respect to Defendant WV DEP only, is continuing to contribute and operate, illegal Open Dumps containing solid waste and hazardous waste on the Subject Property thereby creating or contributing to conditions of *per-se* Public Nuisance and common law Public Nuisance within the Subject Watershed.

*Id.* ¶ 2. *See also id.* ¶ 23 (alleging that Defendant WV DEP has created and operated Open Dumps in violation of federal and state laws).

Plaintiff seeks only injunctive relief against WV DEP, requiring that he cease and desists its violations of the Clean Water Act (CWA) and of Resource Conservation and Recovery Act (RCRA) statutory requirements. *Id.* ¶ 23. Plaintiff further requests the recovery of their response costs pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), as well as litigation fees. *Id.* Plaintiff does not seek the award of damages against WV DEP. *Id.* Importantly, Plaintiff asserts that its claims against WV DEP relate not in any connection to its administrative, regulatory, or permitting capacity, but solely to his capacity as the current operator of the Subject Property—essentially, Plaintiff brings suit against WV DEP for its role as a polluter. *Pl.'s Resp. Br.*, ECF No. 50, at 3–4.

Plaintiff points to specific activities which have contributed to the harm for which they seek relief, including: WV DEP's past and continued use of unlined surface impoundments to hold acid mine drainage (AMD) contaminated mining waste and the disposal of this AMD into the environment; its use of unlined ditches to collect leachate and surface runoff contaminated with AMD, and; its past and continued placement of AMD contaminated sludge into unlined drying pits on the Subject Property. *Am. Compl.*, ECF No. 41, ¶¶ 37, 47, 50, 51. Plaintiff alleges that the use of such methods has resulted in substantial adverse impacts to the environment.

Defendant WV DEP filed its Motion to Dismiss on March 15, 2021. *Mot. to Dismiss*, ECF No. 44. WV DEP argues that: 1) WV DEP is entitled to sovereign immunity, 2) Plaintiff is required to exhaust administrative remedies before filing suit, and failed to do so, and 3) the Court should exercise abstention in accordance with the *Burford* abstention doctrine.

**STANDARD OF REVIEW**

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id.* (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

## DISCUSSION

Defendant WV DEP raises three arguments to support the Motion to Dismiss:

1. That WV DEP is entitled to sovereign immunity.

2. That Plaintiff is required to exhaust administrative remedies before filing, which they have failed to do.

3. That this Court should exercise abstention in accordance with the *Burford* abstention doctrine.

*Def. WV DEP's Br. in Supp. of Mot. to Dismiss*, ECF No. 45, at 3. The Court will analyze each argument.

1. Sovereign immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S.

CONST. AMEND. XI. This Amendment has been interpreted to bar citizens from bringing suit against their own states. *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 291 (4th Cir. 2001) (citing *Litman v. George Mason Univ.*, 186 F.3d 544, 549 (4th Cir. 1999)). Further, when, as is the case here, suit is brought only against a state official, the suit is barred "when the State is the real, substantial party in interest." *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (internal quotations omitted)). Although not applicable to this matter, this immunity can be waived. *Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 101 (4th Cir. 2019).

Eleventh Amendment immunity is additionally subject to exception. *Bragg*, 248 F.3d at 291; *see S.C. State Ports Auth. v. Fed. Maritime Comm'n*, 243 F.3d 165 (4th Cir. 2001). The relevant exception at issue here is the *Ex parte Young* doctrine, which provides that an individual may sue a state official for "injunctive or declaratory relief to remedy an ongoing violation of law." *S.C. State Ports Auth.*, 243 F.3d at 170; *Ex parte Young*, 209 U.S. 123 (1908). To determine whether the *Ex parte Young* doctrine applies to a specific case, the court must simply "conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Va. Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). The rationalization behind this exception is that a state officer violating federal law is "stripped of his official character" and "thereby loses the cloak of state immunity." *W. Va. Highlands Conservancy, Inc. v. Huffman,* 651 F. Supp. 2d 512, 523 (S.D.W. Va. 2009) (citing *Ex parte Young*, 209 U.S. at 157). The *Ex parte Young* doctrine should be applied as to not unduly "erode the important underlying doctrine of sovereign immunity while still protecting the supremacy of federal law." *Antrican v. Odom*, 290 F.3d 178, 185 (4th Cir. 2002) (internal quotations omitted).

But there are instances when a suit is only nominally brought against a state official, and effectively operates against the state itself. *Pennhurst*, 465 U.S. at 101. This is the case when a judgment would result in the expenditure of the state treasury or interfere with public administration. *Id.* at 101 n.11. In these cases, the *Ex parte Young* doctrine is not applied. However, when the injunctive relief sought by Plaintiff would result in an expenditure from the state treasury that is considered "ancillary," it is a "permissible and often an inevitable consequence of the principle announced in Ex parte Young." *Edelman v. Jordan*, 415 U.S. 651, 668 (1974).

When considering whether the *Ex parte Young* doctrine applies to a specific case, there is a threshold question of whether the Plaintiff seeks to recover against a state for misconduct that is governed by federal law or by state law. *See Huffman*, 651 F. Supp. 2d at 528. The crux of the analysis of state immunity issues with respect to actions brought under major federal environmental statutes is whether these statutes delegate the regulation of the programs exclusively to the state. *Id.* at 528. In making this determination, Judge Copenhaver has emphasized the importance of the characterization of the conduct that Plaintiff seeks to be remedied: whether the conduct is done by the state official in its regulatory/official capacity or as a polluter. *Id.* Where a plaintiff seeks to bring action against the state in its role as a regulator applying *state programs or laws*, such action is barred by the Eleventh Amendment. *See id.* 528–529 (discussing that when the state's misconduct stems from its "failure to act in its regulatory role" such action is barred, *id.* at 529); *see Bragg*, 248 F.3d 275. But, where a plaintiff brings action against the state in its role as polluter in violation of *federal law*, such claims are not precluded by the Eleventh Amendment and can proceed under the *Ex parte Young doctrine*. *See Huffman*, 651 F. Supp. 2d at 529 (discussing that when the state acts as the "operator of the bond forfeiture site" and is considered the polluter violating federal law, the "*Ex parte Young exception*" to the Eleventh Amendment is

applicable).

Here, the applicable inquiry is whether Plaintiff's claims brought under the CWA, CERCLA, and RCRA allege ongoing violations of *federal* law and seek prospective relief. The court must look closely to the alleged violations to determine whether the violations arise under the state administration of state regulatory programs, or whether, similar to *Huffman*, the violations have a "federal character." *Huffman*, 651 F.Supp.2d at 529.

At the outset of this inquiry, it is relevant to note that Defendant WV DEP argues for immunity against claims brought under CERCLA, RCRA, and the CWA under the case *Burnette v. Carothers* out of the Second Circuit. In *Burnette*, the court considered claims brought by homeowners against state officers pursuant to "substantially identical provisions" of these environmental statutes. *Burnette v. Carothers*, 192 F.3d 52, 57 (2d Cir. 1999). The court found that these statues fail to "unequivocally express Congress's intent to abrogate sovereign immunity and subject states to suit" and that they are actually "expressly limited by the Eleventh Amendment."[1] *Id.* This, at first glance, seems instructive to this Court's inquiry—however— Defendant WV DEP fails to point out that the Second Circuit entirely refused to consider whether the claims fit within the *Ex parte Young* exception to the Eleventh Amendment due to the appellants' failure to raise this issue in the district court. *Id.* at 58. Because the issue was not raised before the district court, the Second Circuit considered it waived and did not evaluate the argument that claims against state officials arising under the citizen suit provisions of these federal environmental statutes are subject to the *Ex parte Young* doctrine. *Id.* That very question is before this Court now, and because the Second Circuit did not even address it in its opinion, the argument put forth by Defendant that he is immune under the *Burnette* decision is not persuasive.

---

[1] The Court notes that Plaintiff here does not make the argument that Congress abrogated sovereign immunity in the relevant federal environmental statutes.

Plaintiff's claims against Defendant WV DEP include:

- Count One: Recovery of Response Costs and Declaratory Relief pursuant to CERCLA
- Count Two: Citizen Suit relief to enforce requirements of RCRA § 4005(a) and the statutory provisions of the West Virginia Solid Waste Management Act and implementing regulations that became effective under RCRA
- Count Three: Citizen suit relief under RCRA 42 U.S.C. § 6972(a)(1)(B)
- Count Four: Citizen relief under the CWA
- Count Five: Judicial abatement of a public nuisance per se declared by the general law of West Virginia
- Count Six: Judicial abatement of a continuing public nuisance pursuant to the common law of West Virginia.

*See Am. Compl.*, ECF No. 41. The Court will address whether Defendant WV DEP is entitled to sovereign immunity with respect to each Count.

a. <u>Count I (CERCLA)</u>

Plaintiff alleges that Defendant WV DEP is liable under 42 U.S.C. §§ 9607(a) and 9613(g) for recovery of response costs and also seeks declaratory relief. *Am. Compl.*, ECF No. 41, ¶¶ 70–78. Plaintiff brings this claim under the citizen suit provision of CERCLA. 42 U.S.C. § 9659. While the text of the CERCLA citizen suit provision authorizes suit against the government, such ability is expressly limited by the Eleventh Amendment. *Id.* ("[A]ny person may commence a civil action on his own behalf—against any person (including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter."). Thus, the statute itself contemplates that the government can be sued pursuant to CERCLA as limited by Eleventh Amendment jurisprudence, implicating the application of *Ex parte Young*. To the Court's knowledge, the question of whether a § 9607 private party cost recovery and declaratory judgment action may fall under the *Ex parte Young* exception has not been directly addressed by the courts.

In *Pennsylvania v. Union Gas Co.*, the Supreme Court held that the language of CERCLA

intentionally abrogated the States' Eleventh Amendment immunity. *Pennsylvania v. Union Gas Co.*, 491 U.S. 1 (1989). However, the *Union* decision was specifically overruled by *Seminole Tribe v. Florida*, 517 U.S. 44 (1996), which held that Congress cannot constitutionally abrogate States' immunity pursuant to its powers under the Commerce Clause. The question remains still as to whether private party claims under CERCLA fall under the *Ex parte Young* doctrine.[2]

Here, Plaintiff seeks a declaratory judgment holding Defendant WV DEP liable for the necessary response costs to be incurred by Plaintiff due to Defendant WV DEP's release of hazardous substances. *Am. Compl.*, ECF No. 41, ¶ 78. This relief, Plaintiff argues, is "entirely equitable in nature." *Pl.'s Br.*, ECF No. 50, at 11. CERCLA section 107(a) states that the persons who are deemed liable for the contaminated property are liable for "any other necessary costs of response incurred by another person consistent with the national contingency plan." 42 U.S.C. 9607(a)(4)(b).

The Court must identify whether Plaintiff's CERCLA claims allege ongoing violations of federal law. The Court can do so here, as the Complaint alleges that:

> WV DEP's past and on-going placement of AMD contaminated mining waste in unlined surface impoundments, it[s] continuing use of unlined ditches to partially collect AMD contaminated surface runoff and leachate, and its past and continuing placement of AMD contaminated sludges from the surface impoundment into unlined drying pits on the Subject Property, Hazardous Substances were Disposed of at and from the Subject Property and within the Subject Watershed.

*Am. Compl.*, ECF No. 41, ¶ 73; *see* 42 U.S.C. § 9607(a)(4)(B) (stating that persons who accept hazardous substances "for transport or disposal" from which there is a release which causes the

---

[2] The Southern District of Indiana considered the question of whether the *Ex parte Young* doctrine applied to CERCLA private party suits but concluded that because the State agency itself was named as the defendant, not an individual state official, the doctrine did not apply to the matter before the court. *Louisville Public Warehouse v. Indiana Depa5t. Of Transp.*, 2001 WL 980583, No. 01-140-C-B/G (Aug. 24, 2001). Here, Plaintiff names Secretary Ward as the defendant, so this case is not instructive.

incurrence of response costs shall be liable for such costs incurred by any other person consistent with the national contingency plan). Plaintiff further alleges that the hazardous substances released from the facilities have migrated into the environment in violation of CERCLA. *Id.* ¶¶ 74, 76–77. The continuous nature of the conduct underlying this CERCLA claim satisfies the requirement that Plaintiff alleges ongoing violations of federal law.

Next, the Court must evaluate whether the relief sought is prospective in nature. Part of the relief that Plaintiff requests is that Defendant WV DEP be held liable for the costs incurred by Plaintiff for its response during May of 2018, when Plaintiff conducted an environmental investigation of the property. These costs have already been incurred by Plaintiff, and Plaintiff essentially seeks reimbursement for these costs.

There is precedent within the Fourth Circuit that holds that the *Ex Parte Young* doctrine can apply even when the prospective relief requested by a plaintiff would require the state to spend money. *See Antrican*, 290 F.3d 178; *CSX Transp. Inc., v. Bd. Of Public Works of State of W. Va.*, 138 F.3d 537, 541 (4th Cir. 1998) ("[T]he Fourth Circuit has explained that *Ex parte Young* relief may be still available despite its impact on the state treasury." (citing *Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653, 662 (4th Cir. 1989)). In its decision in *Antrican v. Odom*, the Fourth Circuit noted that "simply because the implementation of such prospective relief would require the expenditure of substantial sums of money does not remove a claim from the *Ex parte Young* exception. *Ex parte Young* permits federal courts to enjoin state officials to conform their conduct to the requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." *Antrican*, 290 F.3d at 185 (internal quotations omitted). The proper inquiry, the court explains, is whether such relief is "prospective or retroactive in nature." *Id.* at 186. The *Antrican* plaintiffs sought a declaratory judgment that dental healthcare services provided under Medicaid programs

did not comply with the requirements of the Medicaid Act, as well as an injunction which required state officials to comply with the Act by making such services available. *Id.* at 182. Because the relief required was prospective and would bring the state officials into compliance with the Medicaid Act, the fact that the state would have to spend money to comply with the court's order did not remove the claim from the *Ex parte Young* exception.

The *Antrican* court relied on the Supreme Court decision in *Milliken v. Bradley* to support its holdings. 433 U.S. 267 (1996). In *Milliken*, the Supreme Court upheld an injunction in a desegregation case that ordered the state to pay half of the costs attributable to the educational programs that were ordered as a party of the desegregation decree, finding that the order did no more than "enjoin state officials to conform their conduct to the requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." *Milliken*, 433 U.S. at 289.

The Fourth Circuit has discussed the retroactive/prospective nature of requested monetary relief in an *Ex parte Young* analysis in *CSX Transportation v. Board of Public Works of State of West Virginia*. In this case, the court discussed *Edelman v. Jordan*, where plaintiffs alleged that the officials of the Illinois Department of Health, Education, and Welfare, violated federal law by improperly authorizing disability grants and by not processing the applications within the applicable time requirements. *Edelman*, 415 U.S. at 655. The *Edelman* plaintiffs sought declaratory and injunctive relief, specifically requesting a "permanent injunction enjoining the defendants to award the entire class of plaintiffs all AABD benefits wrongfully withheld." *Id.* at 656. The relief sought by these plaintiffs required payment of state funds, not ancillary to the compliance of federal law in the future, "but as a form of compensation" for past actions when the state official "was under no court-imposed obligation to conform to a different standard." *Id.* at 668. In effect, it was a "monetary loss resulting from a past breach of legal duty on the part of the

defendant state officials." *Id.*

In discussing the *Edelman* case, the Fourth Circuit described the disallowed monetary relief as an "award of equitable restitution," that was "in practical effect indistinguishable in many aspects from an award of damages against the State." *CSX Transp., Inc.*, 138 F.3d at 542 (citations omitted). Here Plaintiff requests essentially just that—restitution for the monetary loss that they incurred and argue that Defendant WV DEP is liable for. The payment that Plaintiff seeks would not be coming out of Mr. Ward's pocket but would be expended from public funds of the state. *See Edelman*, 415 U.S. at 665 ("It is one thing to tell the Commissioner of Social Services that he must comply with the federal standards for the future if the state is to have the benefit of federal funds in the programs he administers. It is quite another thing to order the Commissioner to use state funds to make reparation for the past. The latter would appear to us to fall afoul of the Eleventh Amendment if that basic constitutional provision is to be conceived of having any present force." (citing *Rothstein v. Wyman,* 467 F.2d 226, 236–37 (C.A.2 1972), *cert. denied*, 411 U.S. 921 (1973)). The relief requested in effect amounts to an award of compensatory damages. This retroactive payment is not permitted under the *Ex parte Young* exception to the Eleventh Amendment. To the extent that Plaintiff seeks payment for past costs incurred under CERCLA, Defendant WV DEP is immune from suit.

Plaintiff also requests declaratory relief that Defendant WV DEP bear the costs for the response actions—the investigation and the remedial actions—that have yet to occur. Plaintiff makes this request based on CERCLA section § 113(g), which holds that a declaratory judgment on liability requires responsible parties to be liable for future cost of response. *See* 42 U.S.C. § 9613(g); *see Dent v. Beazer Materials and Srvs.*, 156 F.3d 523, 532 (4th Cir. 1998) (discussing how, under CERCLA, declaratory judgments permit actions for further response costs). Plaintiff

-13-

intends to conduct the response actions itself, and request that Defendant WV DEP, in addition to the other Defendants and Cross-Defendant, be liable, jointly and severally, for these costs incurred by Plaintiff. *Am. Compl.*, ECF No. 41, ¶ 78. The relief sought is not that Defendant WV DEP undertake the response actions, but that Defendant WV DEP pay the costs for Plaintiff's actions. These costs that Plaintiff requests are prospective but are essentially future compensatory damages. Such expenditure of money by the state would not be ancillary to any injunctive relief, but is the actual relief sought by Plaintiff. *See Long Island Pure Water Ltd. v. Cuomo*, 375 F. Supp. 3d 209, 217–18 (E.D.N.Y. 2019). The relief requested by Plaintiff here is the kind of impermissible relief discussed by the Supreme Court in *Edelman*. 415 U.S. 651. In *Edelman*, plaintiffs sought compensation for the withheld AABD benefits. *Id.* at 668. The Supreme Court considered this a "payment of state funds, not as a necessary consequence of compliance… but as a form of compensation." *Id*. In practical effect, Plaintiff requests this Court to order Defendant WV DEP to pay Plaintiff back for the expenses Plaintiff will incur in the future pursuant to their response actions on the Subject Property. Although the expenses have yet occurred, the future reimbursement is the actual relief sought. This expenditure of money cannot be considered ancillary. Thus, Plaintiff's CERCLA claim does not fall under the *Ex parte Young* exception to the Eleventh Amendment, and Defendant WV DEP is immune to suit. The Motion to Dismiss as to Count I of the Amended Complaint is **GRANTED**.

    b.  <u>Count II (RCRA)</u>

       Plaintiff alleges that Defendant WV DEP is not in compliance with the requirements of RCRA and its regulations in addition to the WV Solid Waste Management Act and bring suit under the "citizen suit" provision of RCRA found in Section 7002(a)(1)(A) alleging violations of § 4005(a). *Am. Compl.*, ECF No. 41 ¶¶ 79-100.

i.      Violations of RCRA § 4005(a)

RCRA section 4005(a) prohibits the open dumping of solid waste or hazardous waste. 42 U.S.C. § 6945. Section 7002 authorizes citizens to commence a civil action against any person "who has contributed to or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). Thus, plaintiffs may bring citizen suit for violations of RCRA. Plaintiff here seeks the enforcement of RCRA § 4005(a).

While the issue of whether the *Ex parte Young* doctrine applies to a citizen suit claim under RCRA appears novel to this Court, other district courts have addressed this issue. The plaintiff in *Potomac Riverkeeper, Inc., v. National Capital Skeet & Trap Club, Inc.* alleged violations of RCRA § 4005(a) against the Secretary of the Maryland Department of National Resources. 388 F. Supp. 2d 582 (N.D. Md. 2005). While the Secretary asserted that Eleventh Amendment immunity barred plaintiff from bringing the claim against him, the district court found that the claims could be brought under the *Ex parte Young* exception. *Id.* at 589. The plaintiff's dumping claim was based on the then-current presence of pollutants that were potentially "creating an imminent and substantial endangerment." *Id.* That court further found that the request for remediation was prospective. *Id.* The District of New Jersey held similarly, finding that the Eleventh Amendment did not bar suit against the New Jersey Department of Transportation (NJDOT) state officials because the relief sought by the plaintiffs was prospective declaratory and injunctive relief requiring the NJDOT Defendants to "comply with the highway permit and control sources contributing to sediment contamination." *Raritan Baykeeper, Inc. v. NL Industries, Inc.*, No. 09-cv-4117 (JAP), 2013 WL 103880, at *22–*23 (D.N.J. Jan. 8, 2013). Further, the court found that

any money spent to comply with the prospective relief would be ancillary, and thus, permissible. *Id.* at \*23. The Southern District of New York has also found that a RCRA claim for injunctive relief falls under the *Ex parte Young* exception. *Prisco v. New York*, No. 91-civ-3990 (RLC), 1996 WL 596546, at \*16 (S.D.N.Y. Oct. 16, 1996).

Similarly, in *Cox v. City of Dallas*, plaintiffs brought action against the Executive Director of the Texas Natural Resource Conservation Commission claiming that the Director failed to certify certain dumps in Dallas, TX on the EPA's Open Dump Inventory and that he failed to comply with his RCRA obligations to clean these dumps. 256 F.3d 281, 288 (5th Cir. 2001). The Director asserted that he was protected by the Eleventh Amendment, but the Fifth Circuit found that the claims were within the *Ex parte Young* exception. *Id.* at 308. The court found that: the claims were against the Director in his official capacity; plaintiffs sought prospective injunctive relief, and; plaintiff's allegations were of federal—not state—law. *Id.*

Like the *Potomac Riverkeeper* plaintiffs, Plaintiff here alleges an ongoing violation of federal law, alleging that Defendant WV DEP is continuously violating section 4005(a) by using unlined surface impoundment ponds to treat AMD contaminated mine waste, which is a solid waste. The relief that Plaintiff requests, the enforcement of RCRA § 4005, would not directly impact the state treasury. In this request, Plaintiff is not seeking any kind of direct payment; Plaintiff merely requests that the Defendant be required to come into compliance with RCRA and the regulations promulgated pursuant to RCRA. Any amount of money expended to comply with this mandate would be ancillary. *See Raritan Baykeeper, Inc.*, 2013 WL 103880 at \*23. This claim falls under the *Ex parte Young* exception to the Eleventh amendment. Defendant WV DEP is not immune from suit.

      ii.    <u>Violations of the WV Solid Waste Management Act Requirement</u>

Plaintiff alleges that Defendant WVDEP is continuing to violate the West Virginia Solid Waste Management Act by utilizing the unlined surface impoundments, which resulted in the contamination of the environment by hazardous and solid wastes. *See Am. Compl.*, ECF No. 41 ¶ 98; W. VA. CODE § 22-15-10(a). WV DEP asserts that this relief cannot be permitted by *Ex parte Young* because the violations are of state law—not of federal law.

Judge Copenhaver's reasoning in *Huffman* aids the Court in considering this issue. 651 F. Supp. 2d 512 (S.D.W. Va. 2009). Citing to *Arkansas v. Oklahoma*, 503 U.S. 91 (1992), Judge Copenhaver explores the principles of federalism in the context of the relationship between state and federal environmental laws. He discusses how the Supreme Court in *Arkansas* noted that the Clean Water Act regulations incorporated state laws into a "unitary federal enforcement scheme, making State law, in certain circumstances, federal law." *Huffman,* 651 F. Supp. 2d at 525 (citing *Bragg*, 248 F. 3d at 294). Further, *Arkansas* states:

> [W]e have long recognized that interstate water pollution is controlled by federal law. Recognizing that the system of federally approved state standards as applied in the interstate context constitutes federal law is wholly consistent with this principle. Second, treating state standards in interstate controversies as federal law accords with the Act's purpose of authorizing the EPA to create and manage a uniform system of interstate water pollution regulation.

*Arkansas*, 503 U.S. at 110. Judge Copenhaver utilized this reasoning in *Huffman* to find that citizen suits could move forward "regardless of whether a state has been granted the authority to administer its own NPDES Program." *Huffman*, 651 F. Supp. 2d at 527–28. He explains that the CWA lacks a character of exclusive regulatory delegation to the states, but rather, that the CWA is intended to be a cooperative scheme between states and the federal government, so therefore, the CWA citizen suit provision could be utilized to remedy violations of CWA water quality measures and the NPDES permit requirement. *Id.* at 528.

The issue before the Court here is whether or not a claim pursuant to the Solid Waste Management Act falls underneath the *Ex parte Young* exception to the Eleventh Amendment. Plaintiff alleges that Defendant WV DEP is disposing of solid waste without a permit in contravention of the Act. The Ninth Circuit has also spoken to this issue directly. The Ninth Circuit has held that state laws which are given legal effect under RCRA as essentially federal. *Ashoff v. City of Ukiah*, 130 F.3d 409 (9th Cir. 1997). In *Ashoff*, the court noted that:

> A second provision of RCRA authorizes citizen suits even after the EPA has approved a state program. It relates to open dumps, which are any facility or site that fails to meet the federal criteria promulgated under Section 6944.  42 U.S.C. § 6903(14).  RCRA specifically provides that any person violating the open dumping standards is subject to citizen suit under Section 6972. 42 U.S.C. § 6945(a). The EPA correctly notes in its brief that "[n]othing in RCRA suggests that the federal open dumping prohibition is diminished by EPA's determination that a state Subtitle D program is adequate."

*Id.* at 411 n.3. Once state standards become effective pursuant to RCRA, so long as the state standards are no more stringent than the federal criteria, a citizen can sue to enforce the standard, because the "federal criteria give the state standards legal effect under federal law." *Covington v. Jefferson Cnty.*, 358 F.3d 626, 642 (9th Cir. 2004) (citing *Ashoff*, 130 F.3d at 411); *see also Envirowatch, Inc. v. Fukino*, No. 07-00016 SOM-BMK, 2007 WL 676001, at *4 (D. Haw. Feb. 28, 2007) (stating that state permit standards are enforceable under RCRA because such permitting program became effective pursuant to RCRA).

The West Virginia Solid Waste Management Act was adopted to satisfy the minimum requirements of Subtitle D and was approved by EPA. These state laws are implemented to fulfill a federal objective and are essentially federal in character. Further, the relief sought by Plaintiff pursuant to this claim is the enforcement of the standards, a prospective, injunctive relief. This Court finds that a claim pursuant to the West Virginia Solid Waste Management Act lawfully falls under the *Ex parte Young* exception to the Eleventh Amendment and can be brought against

Defendant WV DEP pursuant to RCRA § 7002(a)(1)(A). 42 U.S.C. 6972(a)(1)(A) (providing that a citizen suit can be brought against any person alleged to be in violation of a requirement "which has become effective pursuant to this chapter"); *Ashoff*, 130 F.3d at 411 ("Thus, if state standards become effective pursuant to RCRA, a citizen can sue in federal court to enforce the standard." (quotation omitted)); *Covington.*, 358 F.3d at 643–44 (finding that violations of state standards can be used to prove a claim under RCRA). The Motion to Dismiss as to Count II of the Amended Complaint is **DENIED**.

c. <u>Count III (RCRA)</u>

Pursuant to RCRA § 7002(a)(1)(B), Plaintiff requests the judicial abatement of the conditions at the Subject Property. *Am. Compl.*, ECF No. 41, ¶¶ 101-111. RCRA allows a party to seek such abatement of potential imminent and substantial endangerments that may be posed to public health or the environment by the past or present handling of disposal of hazardous and/or solid waste. In their complaint, Plaintiff alleges that Defendant WV DEP's on-going handling and disposal of solid and hazardous wastes in unlined surface impoundments, ditches, and drying pits have caused and contributed to environmental harm and the significant impairment to the water quality of ground and surface waters in the watershed. *Am. Compl.*, ECF No. 41, ¶ 110. These circumstances, Plaintiff argues, "present a serious, substantial and very imminent, and in fact, ongoing endangerment to health or the Environment within the Subject Watershed." *Id.*

Plaintiff asserts that, pursuant to RCRA § 7002(a)(1)(B), they are entitled to an Order requiring Defendant WV DEP and the other defendants to:

> 1) undertake, at their cost, a Remedial Investigation and Feasibility Study (RI/FS);
> 2) timely and competently implement immediate/interim removal or remedial actions in order to abate the dangers to health and the environment, at their own cost;
> 3) timely and competently implement at their own cost the Remedial

> Action Plan, if any, after filing the final RI/FS with the Court;
> 4) appoint a Special Master who can see to the timely and effective implementation of the Courts orders and adjudicate in the first instance disputes between the parties, and;
> 5) to award Plaintiff L4C the costs of this litigation.

*Am. Compl.*, ECF No. 41, ¶ 111.

The Court has already discussed the question of whether RCRA citizen suit claims fall under the *Ex parte Young* exception. These claims arise under, federal, not state law. Plaintiff also alleges that the RCRA violations are ongoing. And, requests for remediation have been considered prospective by other courts. *See Potomac Riverkeeper*, 388 F. Supp. 2d at 589; *Prisco*, 1996 WL 596546, at *16 (noting that "[r]emedial action…would be considered forward-looking" and that the plaintiff "seeks simply to obtain injunctive relief in accordance with RCRA's own provisions"); *see also Raritan Baykeeper*, 2013 WL 103880, at *22–*23 (finding that injunctive relief requiring state officials to "control any sources that contribute to sediment contamination" was prospective and that the money spent to comply with the relief was ancillary). The costs associated with Plaintiff's requested relief are ancillary to Defendant WV DEP's abatement of the conditions of the Subject Property.[3] Thus, Defendant WV DEP is not immune from suit with respect to this claim. The Motion to Dismiss as to Count III of the Amended Complaint is **DENIED**.

> d. <u>Count IV CWA</u>

Plaintiff alleges that Defendant WV DEP is in violation of CWA sections 301 and 402 due to the ongoing, unpermitted point source discharges of pollutants into navigable waters and seek relief under the "citizen suit" provision of the CWA found in section 505. *Am. Compl.* ECF No.

---

[3] This relief can be compared to that in *Long Island Pure Water Ltd.*, 375 F. Supp. 3d 209. In that case, the plaintiff requested the costs for the feasibility studies to be performed by plaintiff, not, as is the case here, that the state official defendant undertake the feasibility study.

41, ¶¶ 112–123. This Court has already considered the issue of whether cases brought under the CWA citizen suit provision are subject to the *Ex parte Young* doctrine and has decided in the affirmative. *Huffman*, 651 F. Supp. 2d at 529 ("The claim that the Secretary is discharging pollutant without a permit retains its federal character… [a]s such, the *Ex parte Young* exception to the Eleventh Amendment is applicable").

Here, Plaintiff alleges ongoing violations of the CWA (federal law), arguing that Defendant WV DEP is discharging pollutants from the unlined surface impoundments, unlined drying pits, and unlined drainage ditches into navigable water without a permit. *Am. Compl.*, ECF No. 41, ¶ 122; *Huffman*, 651 F. Supp. 2d at 529. This is true despite the fact that West Virginia has a state-run permitting program. *Huffman*, 651 F. Supp. 2d at 529. The Court could not ascertain the specific relief requested by Plaintiff, as this was not clearly identified in the Amended Complaint. It is implied that Plaintiff seeks a declaratory judgment stating that Defendant WV DEP is in violation of the CWA for discharging pollutants into navigable waters without a permit and seeks injunctive relief requiring Defendant WV DEP to acquire such a permit. If this is the case, and because Plaintiff does not mention relief that would run afoul of the *Ex parte Young* exception, the Court finds that such relief can be properly obtained within *Ex parte Young*. Therefore, Defendant WV DEP is not immune from suit pursuant to Plaintiff's CWA claim. The Motion to Dismiss as to Count IV of the Amended Complaint is **DENIED**.

e. Counts V and VI (Judicial Abatement of a Public Nuisance Per Se and Judicial Abatement of a Continuing Public Nuisance)

Plaintiffs seeks the judicial abatement of a per se public nuisance under the general law of West Virginia and a continuing public nuisance pursuant to common law of West Virginia law. *Am. Compl.*, ECF No. 41 ¶ 124–155. These claims rely on the tenants of *state* law; they do not

allege ongoing violations of *federal* law as required to fall under the *Ex parte Young* exception. *See Huffman*, 651 F. Supp. 2d at 524. Plaintiff points out that, even though nuisance law is state law, Plaintiff seeks to enforce federal open dumping standards. *Pl.'s Br.*, ECF No. 50, at 13. However, unlike the Solid Waste Management Act, given effect under RCRA, and the state pollutant discharge permitting program enacted pursuant to the CWA, the state nuisance law was not given effect under a federal statutory scheme. It has no "federal character." *See Ashoff*, 130 F.3d at 411. Therefore, Defendant WV DEP is immune from these state law claim. Defendant WV DEP's Motion to Dismiss with respect to Counts V and VI is **GRANTED.**

2. <u>Failure to exhaust administrative remedies</u>

Defendant WV DEP asserts that Plaintiff has not pursued administrative remedies before seeking relief from the courts, and therefore, the claims against WV DEP should be dismissed. Specifically, WV DEP argues that Plaintiff alleges injury caused by an action by WV DEP in its official capacity, and thus, were required "voice their objection to the WV DEP's official actions before an administrative tribunal." *Br. for Def.*, ECF No. 45, at 9–10. To support this contention, Defendant WV DEP cites to West Virginia Code section 22B-1-7(b), which states "[a]ny person authorized by statute to seek review of an order, permit, or official action of… the secretary may appeal to… the environmental quality board…." In response, Plaintiff argues that there are no administrative remedies to pursue, as WV DEP is being sued in its role as a polluter, not as a regulator or permitter. *Pl.'s Response*, ECF No. 50, at 14.

Generally, where a statute provides an administrative remedy, "relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act." *Daurelle v. Traders Fed. Sav. & Loan Ass'n of Parkersburg*, 104 S.E.2d 320, 326 (W. Va. 1958). Exhausting administrative remedies gives the agency a chance to "act within the sphere of its special

competence, to apply its expertise, and to correct its own errors…" *Mullins Coal Co. v. Clark*, 759

F.2d 1142, 1145 (4th Cir. 1985). This rule has been considered a "jurisdictional prerequisite to

resort to the courts." *Daurelle*, 104 S.E.2d at 326. There are exceptions to the rule, which include:

1) the claim is collateral to a demand for benefits;
2) that exhaustion would be futile; and
3) that plaintiffs would suffer irreparable harm if required to exhaust administrative remedies

*Hicks v. Mani*, 736 S.E.2d 9, 13 (W. Va. 2010) (quoting *Pavano v. Shalala*, 95 F.3d 147, 150 (2d

Cir. 1996). However, this rule is inapplicable when there are no administrative remedies provided

for by law. *Id.* at 14 (citing *Daurelle*, 104 S.E.2d at 326).

Defendant WV DEP argues that Plaintiff's alleged injury arises pursuant to official actions

involving a revoked mining permit. West Virginia Code section 22-3-17(b) and West Virginia

Code of State Rules section 38-2-12.4.b.2 provide that, if a permittee does not conform with the

terms of its permit, WV DEP shall use the funds obtained from the bond and forfeiture proceedings

to complete the reclamation plan. W. VA. CODE R. § 38-2-12.4.b.2 ("In the event forfeiture of the

bond is required by this section, the Secretary shall… use funds collected from bond forfeiture to

complete the reclamation plan, or portion thereof, on the permit area or increment."). Thus,

Defendant WV DEP argues, the actions challenged by Plaintiff are official post-forfeiture

reclamation activities authorized by the West Virginia Surface Mine and Reclamation Act and the

Surface Mining Reclamation Rules, and that Plaintiff must submit a challenge to these actions to

the West Virginia Surface Mine Board or Environmental Quality Board. W. VA. CODE § 22B-1-

7(b) ("Any person authorized by statute to seek review of an order, permit or official action of…the

secretary may appeal to the air quality board, the environmental quality board, or the surface mine

board, as appropriate, in accordance with this section.").

However, Plaintiff's claims against Defendant WV DEP do not arise under the West

Virginia Surface Mining Reclamation Act. Their claims in Counts I, II, III, and IV arise under CERCLA, RCRA, and the CWA—all of which have citizen suit provisions that entitle Plaintiff to bring suit in federal court.[4] These statutes do not provide for any administrative remedies for Plaintiff to pursue.

Plaintiff's other claim against Defendant WV DEP in Count III arises under the West Virginia Solid Waste Management Act. This statute provides for an appeals procedure whereby "[a]ny person having an interest which is or may be adversely affected, or who is aggrieved by an order of the director, or by the issuance or denial of a permit or by the permit's terms or conditions, may appeal to the environmental quality board…" W. Va. Code § 22-15-16. But Plaintiff does not bring suit against Defendant WV DEP in his official regulatory capacity, but in its role as a polluter in violation of the Solid Waste Management Act. This Act was adopted to achieve minimal compliance with the requirements of RCRA and became effective pursuant to the statute. Thus, Plaintiff is authorized to raise this issue in a citizen suit. *See* 42 U.S.C. § 6972; *see Ashoff*, 130 F.3d at 411.

There are no administrative remedies for Plaintiff to exhaust related to the claims raised against Defendant WV DEP. Therefore, Defendant WV DEP's argument that the Court should dismiss Plaintiff's amended complaint for failure to exhaust administrative remedies is inapplicable to this matter.

3. *Burford* abstention doctrine

Lastly, Defendant WV DEP asserts that the questions raised by Plaintiff are so intertwined with state law and policy that the Court should exercise its discretion and dismiss the

---

[4] The citizen suit provision of CERCLA is found in 42 U.S.C. § 9659. The citizen suit provision of RCRA is found in 42 U.S.C. § 6972. The citizen suit provision of the CWA is found in 33 U.S.C. § 1365.

Amended Complaint pursuant to the *Burford* abstention doctrine. *Def.'s Br.*, ECF No. 45, at 10-12. Plaintiff counters that there are no such difficult questions of state law and policy.

The *Burford* abstention doctrine stands for the principle that federal courts should restrain their authority to exercise jurisdiction over an issue where there is an interest in the principles of federalism that outweighs the "federal interest in deciding a case." *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007). It reflects "a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise discretion', restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary." *Burford v. Sun Oil Co.*, 319 U.S. 315, 332–33 (1943) (quoting *Railroad Comm'n v. Pullman Co.*, 312 U.S. 500, 501 (1941). Such action is appropriate: 1) "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law;" 2) "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar," with consideration as to where the "exercise of federal review of the question… would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern," and; 3) "where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings." *Co. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814–16 (1976) (internal citations omitted). Further, application of the *Burford* abstention doctrine seeks to keep federal courts out of situations where there are unsettled issues of state law and where federal interference may "frustrate the purpose of a state's complex administrative system." *Martin*, 499 F.3d at 364 (citing *Burford*, 319 U.S. at 331–32). The exercise of the doctrine is considered an "extraordinary and narrow exception." *Co. River Water*

*Conservation Dist.,* 424 U.S. at 813 (citation omitted). The Supreme Court has declined to apply *Burford* where none of the established criteria were met. *Martin*, 499 F.3d at 365.

Defendant WV DEP asserts that Plaintiff has "directly challenged West Virginia State law decisions rendered by a West Virginia State executive agency, based on largely West Virginia State law." *Def.'s Br.*, ECF No. 45, at 11. This assertion mischaracterizes Plaintiff's claims, and the Court finds that applying the *Burford* abstention doctrine to this case is inappropriate. First, there are no federal constitutional issues that may be "mooted or presented in a different posture by state court determination of pertinent state law." *Co. River Water Conservation Dist.*, 424 U.S. at 814. Second, there are no "difficult questions of state law bearing on policy problems of substantial public import." *Id.* In *Burford*, abstention was appropriate because the federal review the reasonableness of a state commission's permit to drill oil wells interfered with the state's elaborate review system and policy for managing oil fields. *See Burford*, 319 U.S. 315. In contrast, the Supreme Court in *Colorado River Water Conservation District* did not find that the case raised any questions involving unsettled state law or impermissible infringement on state policymaking. In that case, the United States filed suit against water users seeking a declaratory judgment asserting its reserved rights to water on federal and Native American Tribe lands. *See generally Co. River Water Conservation Dist.*, 424 U.S. 800. The Supreme Court found that, although state claims were included in the case, the law was settled. *Id.* at 815. Similarly, here, Plaintiff does not raise issues relating to unsettled law or developing policy. Plaintiff's claims are of straightforward violations of federal and state laws. Lastly, this is not a case where "federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings." *Id.* at 816.

Plaintiff simply asserts straightforward violations of federal law and of the West Virginia Solid Waste Management Act—claims which do not fall under the categories of cases to which

the *Burford* abstention doctrine may apply. Defendant's argument that the Court should exercise its discretion to abstain from hearing this case and dismiss Plaintiff's Amended Complaint is inapplicable to this matter.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS, in part, and DENIES, in part,** the Motion to Dismiss. ECF No. 44.

Specifically, the Motion with respect to Counts II, III, and IV, is **DENIED**.

The Motion with respect to Counts I, V, and VI is **GRANTED**.

The Court also recognizes that Plaintiff requested oral argument on some of the issues addressed in the Motion to Dismiss. *Pl.'s Mot. for Oral Argument on Def. Harold Ward's Mot. to Dismiss*, ECF No. 55; *Pl.'s Corrected Mot.*, ECF No. 58. However, the Court finds oral argument unnecessary to decide the issues. Accordingly, the Motion for Oral Argument is **DENIED AS MOOT** (ECF No. 55), and the Corrected Motion is **DENIED** (ECF No. 58).

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        March 15, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE