**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

LIVING LANDS, LLC,
a West Virginia Limited Liability Company,
D. C. CHAPMAN VENTURES, INC.
a West Virginia Business Corporation,

        Plaintiffs,

v.                                    CIVIL ACTION NO. 3:20-0275

JACK CLINE,
an Individual West Virginia Resident;
BRADY CLINE COAL CO.,
a dissolved West Virginia Business Corporation,
solely to the extent of its undistributed assets,
specifically including the remaining limits of its
available liability coverage under liability insurance
policies covering it and its officers and directors;
SPRUCE RUN COAL COMPANY,
a dissolved West Virginia Business Corporation,
solely to the extent of its undistributed assets,
specifically including the remaining limits of its
available liability coverage under liability insurance
policies covering it and its officers and directors;
HAROLD WARD,
in his official capacity as the Cabinet Secretary of the
West Virginia Department of Environmental Protection,
an instrumentality of the State of West Virginia,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

        Pending before the Court is Defendant Harold Ward's Motion for Summary Judgment on all remaining counts against him. ECF No. 95. For the reasons below, the Court **GRANTS** this Motion. *Id.*

-1-

**BACKGROUND**

The instant suit alleges a series of environmental violations pertaining to the Subject Property. See Am. Compl., ECF No. 41. The Subject Property is located within the Right Fork Spruce Run Watershed in Nicholas County, West Virginia. *Id.* ¶ 1; Def. Harold Ward's Answer to Am. Compl. ¶ 1, ECF No. 73. Plaintiffs comprise the owners in fee simple of the Subject Property, D.C. Chapman Ventures. Inc., and Living Lands, LLC, a real estate investment, management, and redevelopment company that obtained the option to purchase fee simple title to the property in 2019. Am. Compl. ¶¶ 14-17, ECF No. 41. Defendant operators—Jack Cline, Brady Cline Coal Co., and Spruce Run Coal Co. (Coal Mining Defendants)—conducted underground and related above-ground coal mining activities at the site from approximately the 1960s to the 1990s. Am. Compl. ¶¶ 1-2. After Defendant operators ceased operations without complying with environmental and mining permits, they forfeited their reclamation bonds, leaving the West Virginia Department of Environmental Protection (WVDEP) to reclaim the site. *Id.* ¶ 31; Answer to Am. Compl. ¶ 31, ECF No. 73.

While the site has been owned in fee simple by Plaintiff D.C. Chapman Ventures, Inc. since 1999, the WVDEP has been conducting and continues to conduct reclamation activities there. Am. Compl. ¶ 1, ECF No. 41; Def. Harold Ward's Answer to Am. Compl. ¶ 1, ECF No. 73. This reclamation is performed pursuant to WVDEP's authority under the West Virginia Surface Coal Mining and Reclamation Act (WVSCMRA), W. Va. Code § 22, Art. 3, and the West Virginia Abandoned Mine Lands and Reclamation Act (WVAML), W. Va. Code § 22, Art. 2. Am. Compl. ¶ 1. The instant Motion addresses only the counts alleged against Defendant Harold Ward, Cabinet Secretary of the WVDEP, in relation to the agency's ongoing reclamation at the Subject Property. *Id.* ¶ 23; Def. Harold Ward's Mot. for Summ. J., ECF No. 95. Plaintiffs' claims against Defendant

Ward originally included alleged violations of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9607(a) and 9613(g) (Count I); the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6972(a)(1)(A) and (B) (Counts II and III, respectively); the Clean Water Act (CWA), 33 U.S.C. § 1365 (Count IV); common law per se public nuisance (Count V); and common law public nuisance (Count VI). Am. Compl., ECF No. 41.

Plaintiffs allege that Defendant Ward, along with Coal Mining Defendants, caused or contributed to the release of contaminants into the subsurface soils, groundwater, and surface waters of the watershed encompassing Surface Property, thereby introducing toxic contaminants at levels that present an imminent and substantial danger to human health or the environment. Am. Compl. ¶ 2, ECF No. 41. Specifically, they claim the WVDEP uses unlined surface impoundments to hold acid mine drainage (AMD); collects AMD-contaminated leachate and surface runoff in unlined ditches; and places sludge contaminated with AMD into unlined drying pits. *Id.* ¶¶ 37, 47, 50-51. They claim that these "open dumps" on the Subject Property have created AMD that flows into the Right Fork Spruce Run and the Spruce Run Watersheds. Because the WVDEP has not taken adequate steps to contain waste materials, Plaintiffs allege that this movement of material violates the CWA and RCRA. *Id.*

The unlined structures at issue comprise two ditches, several surface impoundments (one "original" and two allegedly created by WVDEP), and a number of drying pits. Plaintiffs claim the three surface impoundments are located within Right Fork Spruce Run. *Id.* ¶ 52. Ditch 1 is similarly connected to the waterway, as it flows into a surface impoundment created by Coal Mining Defendants sometime during the 1960s and which the WVDEP still uses to treat influent AMD. *Id.* ¶ 40. Influent in Ditch 1 and the corresponding impoundment discharge through an

outfall permitted by the National Pollutant Discharge Elimination System (NPDES) program of the CWA.[1] *Id.* It is not disputed that WVDEP has complied with the applicable NPDES permit while reclaiming the site. Mem. of Law in Supp. of Def. Harold Ward's Mot. for Summ. J. at 2, ECF No. 96. However, they argue that not all influent is drained through this outfall, as some influent moves from the unlined structures into groundwaters within the subject watershed. Am. Compl. ¶ 40, ECF No. 41.

While the parties agree on the source of Ditch 1, there has been more debate as to the origins of Ditch 2. Plaintiffs claim that Ditch 2 discharges into the groundwater within the subject watershed via seepage. *Id.* ¶ 41. Ditch 2 is not currently, nor has it ever been, the subject of the NPDES permit. Pls.' Resp. in Opp. to Def. Sec. Harold Ward's Mot. for Summ. J. at 8, ECF No. 103. However, Defendant Ward claims that "Ditch No. 2 contains discharge from a pre-SMCRA (pre-law) mine site for which WVDEP has no permitting obligation." Reply in Supp. of Def. Harold Ward's Mot. for Summ. J. at 11, ECF No. 108. Conversely, in their Notice of Violation, Plaintiffs note that the ditch runs along a pre-existing haul road but has likely been modified by WVDEP. Notice of Violation at 5, ECF No. 41-2. Later, Plaintiffs allege that "it is undisputed that WVDEP constructed Ditch No. 2 at this site to convey AMD from seeps at an improperly sealed mine portal." Pls.' Resp. in Opp. to Def. Sec. Harold Ward's Mot. for Summ. J. at 28, ECF No. 103. Plaintiffs claim that WVDEP has therefore constructed and is currently operating the ditch. *Id.* at 8, 28; Pls.' Surreply in Further Opp. to Def. Sec. Harold Ward's Mot. for Summ. J. at 24, ECF No. 117 ("Ditch No.2 [sic] . . . was constructed at the site by Defendant Secretary Ward's agents or employees.").

---

[1] Pursuant to *West Virginia Highlands Conservancy, Inc. v. Huffman*, 625 F.3d 159 (4th Cir. 2010), WVDEP is required to obtain NPDES permits when performing reclamation activities at abandoned coal mining sites.

Ultimately, Plaintiffs allege that seepage from Ditches 1 and 2, the impoundments, and drying pits form a "comingled, single plume of mine waste" within the groundwater aquifer at a point upgradient from Right Fork Spruce Run. Am. Compl. ¶ 48, ECF No. 41. Any seepage, they argue, discharges into the Right Fork Spruce Run and constitutes the functional equivalent of a direct discharge to surface waters for purposes of the CWA. *Id.* ¶¶ 40-41. They allege that seepage to Right Fork Spruce Run impairs Spruce Run and Muddlety Creek, both of which are waters of the United States under the CWA. *Id.* ¶ 48.

On March 15, 2021, Defendant Ward moved to dismiss all counts against him for failure to exhaust administrative remedies and failure to state a claim. Sec. Harold Ward's Mot. to Dismiss, ECF No. 44. The Court granted this Motion in part and denied it in part, dismissing only Counts I (CERCLA), V (public nuisance per se), and VI (public nuisance). Mem. Op. and Order at 27, ECF No. 72. On September 30, 2022, Defendant Ward moved for summary judgment on all remaining counts. Def. Harold Ward's Mot. for Summ. J., ECF No. 95. Several weeks later, on October 17, 2022, Plaintiffs moved to file a second amended complaint, noting that the Amended Complaint referenced an inapplicable maximum contaminant level (MCL) for beryllium. Pls.' Mot. for Leave to File Second Am. (i.e., Corrected) Compl., ECF No. 100. Plaintiffs acknowledged that, in the Amended Complaint, they had referred to an MCL for beryllium under appendix I of RCRA, when they should have referenced the MCL for beryllium under the Safe Drinking Water Act.[2] *Id.* at 3-7.

The Court denied Plaintiffs leave to amend the Amended Complaint because the request to do so was well after the close of discovery and would unduly prejudice Defendant Ward. ECF No.

---

[2] Defendant Ward had pointed out that the lack of an MCL for beryllium under appendix I when moving for summary judgment. Mem. of Law in Supp. of Def. Harold Ward's Mot. for Summ. J. at 11, ECF No. 96.

115. However, following a full briefing, the Court did grant Plaintiffs leave to file a surreply to the motion for summary judgment. Pls.' Surreply in Further Opp. to Def. Sec. Harold Ward's Mot. for Summ. J., ECF No. 117. In doing so, the Court also granted Defendant Ward leave to file a surrebuttal. Def. Ward's Supplemental Mem. in Supp. of Summ. J., ECF No. 119.

In the instant Motion, Defendant Ward argues for summary judgment as to the three remaining counts against him: specifically, Counts II and III under RCRA and Count IV under the CWA. Def. Harold Ward's Mot. for Summ. J., ECF No. 95. Regarding the RCRA claims, Defendant Ward argues that the Bevill amendment to RCRA exempts the waste at issue from the statute's definition of hazardous waste, and that the reclamation activities at the site are further excluded from regulation under RCRA Subtitle D because they are subject to a CWA permit. Mem. of Law in Supp. of Def. Harold Ward's Mot. for Summ. J. at 6-8, ECF No. 96. In the alternative, he contends there is no evidence that WVDEP engaged in the act of open dumping—that is, introduced a substance that would cause the groundwater concentration to exceed an MCL, or that the conditions present an imminent or substantial endangerment. *Id.* at 9-11. As to the claim under the CWA, Defendant Ward argues both that the claim is foreclosed by *County of Maui v. Hawaii Wildlife Fund*, 140 S. Ct. 1462 (2020) and barred under the permit shield defense. *Id.* at 12-14.

Plaintiffs respond that WVDEP's facilities and practices are not excluded from RCRA Subtitle D's open dumping criteria, as the exclusion applies only to the actual point source. Pls.' Resp. in Opp. to Def. Sec. Harold Ward's Mot. for Summ. J. at 11-17, ECF No. 103. They then argue that the in-stream surface impoundments, ditches, and drying pits constitute open dumps under RCRA because they violate the floodplain and groundwater criteria under Subtitle D of RCRA, as set out in 40 C.F.R. §§ 257.3-1 and 257.3-4, respectively. *Id.* at 17-19, 19-22. Finally, regarding Count IV under the CWA, Plaintiffs argue that summary judgment is not proper because

WVDEP, responsible for operating and constructing Ditch 2, is also responsible for the unpermitted discharge directly from the ditch into Right Fork Spruce Run. *Id.* at 28-30.

## LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## ANALYSIS

The Court finds summary judgment is appropriate as to all remaining counts against Defendant Ward. Count II under RCRA, 42 U.S.C. § 6972(a)(1)(A), fails because the WVDEP did not violate any RCRA-based regulation. Given that Subtitle D's open dumping criteria do not apply to the facilities and practices in question, the agency could not have engaged in open

dumping. Count III under RCRA, 42 U.S.C. § 6972(a)(1)(B), also fails, as Plaintiffs have provided no evidence that seepage from unlined structures or the threat of a washout at the Subject Property contributes to an imminent and substantial endangerment to health or the environment. Finally, as to Count IV under the CWA, Plaintiffs have not offered any evidence that the groundwater seepage constitutes the functional equivalent of a discharge.

I.    Claims Arising Under RCRA

Summary judgment is appropriate for both RCRA claims against Defendant Ward. "RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of hazardous waste." *Goldfarb v. Mayor of Baltimore*, 791 F.3d 500, 504 (4th Cir. 2005) (quoting *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996)). To further its aim of minimizing threats to human health and the environment, 42 U.S.C. § 6902(b), the statute provides two enforcement mechanisms for private citizens. 42 U.S.C. § 6972. First, private citizens can bring an action against "any person . . . alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to [RCRA]." 42 U.S.C. § 6972(a)(1)(A). Second, private citizens can bring an action against "any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B).

Plaintiffs couch claims against Defendant Ward under both citizen suit provisions. Count II arises under 42 U.S.C. § 6972(a)(1)(A), and in the Amended Complaint, Plaintiffs base it on the allegation that Defendant Ward has violated the groundwater criteria of RCRA's open dumping prohibition by contaminating an underground drinking water source. Am. Compl. ¶¶ 79-100 (citing 40 C.F.R. § 257.3-4(a)). In their response to Defendant Ward's Motion for Summary

Judgment, however, Plaintiffs attempt to broaden this theory of violation beyond that alleged in their Amended Complaint, also basing this claim on alleged violations of floodplain criteria for open dumping. Pls.' Resp. in Opp. to Def. Sec. Harold Ward's Mot. for Summ. J. at 17-19, ECF No. 103 (citing 40 C.F.R § 257.3-1).

Count III arises under 42 U.S.C. § 6972(a)(1)(B), based on the claim that Defendant Ward has contributed to an imminent and substantial endangerment to human health or the environment. *Id.* ¶¶ 101-11. In the Notice of Endangerment and Amended Complaint, Plaintiffs center this claim on virtually the same conduct laid out in Count II—namely, that Defendant Ward has contributed or is contributing to an imminent and substantial endangerment by handling and disposing of solid waste in unlined surface impoundments, ditches, and drying pits. Am. Compl. ¶ 110, ECF No. 41; Notice of Endangerment, ECF No. 1-2. These unlined structures, Plaintiffs allege, leak contaminants, thereby contaminating soil, groundwater, and ultimately surface waters. Notice of Endangerment at 5, ECF No. 1-2. In responding to Defendant Ward's Motion for Summary Judgment, however, Plaintiffs once again tack on an additional allegation: that Defendant Ward has created an imminent and substantial risk of endangerment because a wash-out or flood event would contaminate Right Fork Spruce Run by adding harmful levels of aluminum. Pls.' Resp. in Opp. to Def. Sec. Harold Ward's Mot. for Summ. J. at 19, ECF No. 103.

The Court finds Defendant Ward is entitled to summary judgment as a matter of law on both counts. Count II fails because Plaintiffs' move to a floodplain theory of violation at the summary judgment stage constitutes an impermissible attempt to constructively amend the Amended Complaint. Even if Plaintiffs had pleaded this theory from the start, however, the claim would still not be viable, as the waste at issue is excluded from the criteria used to determine whether a facility or practice constitutes open dumping. Finally, Counts II and III under RCRA

both fail for the simple reason that Plaintiffs have failed to show a probable risk of harmful contamination at the Subject Property from groundwater contamination, much less at a level that presents an imminent and substantial endangerment within the confines of RCRA.

### a.  Count II–Alleged Violations of Open Dumping Provisions

The Court begins with the issue of whether RCRA applies to WVDEP's activities on the Subject Property. While both parties agreed at the pretrial motions hearing that WVDEP's reclamation work at the site is subject to RCRA, specifically Subtitle D, the parties spent some time debating this issue during briefing. *See, e.g.*, Mem. of Law in Supp. of Def. Harold Ward's Mot. for Summ. J. at 2, ECF No. 96 (claiming Defendant is "not aware of *any* authority . . . suggesting that RCRA applies to abandoned mining sites like the one at issue in this case").

The Court finds that, here, RCRA applies. While the statute regulates hazardous waste under Subtitle C, non-hazardous solid wastes—such as the material at issue—are subject to the more lenient guidelines of Subtitle D. 42 U.S.C. §§ 6921-39g and 40 C.F.R. §§ 260-73 (pertaining to Subtitle C); 42 U.S.C. §§ 6941-49a and 40 C.F.R. §§ 239-59 (pertaining to Subtitle D). The regulation of mining waste under Subtitle D has not always been so clear. *See Env't Def. Fund v. EPA*, 852 F.2d 1309, 1313 (D.C. Cir. 1988) (discussing the Bevill Amendment and its effect on regulating mining waste). Shortly after the passage of RCRA, Congress passed the Bevill Amendment, which temporarily excluded special wastes, including mining waste, from Subtitle C regulation. 42 U.S.C. § 6921(b)(3)(A)(ii) ("[Solid waste from the extraction, beneficiation, and processing of ores and minerals] shall . . . be subject only to regulation under other applicable provisions of Federal or State law in lieu of [subtitle C] until at least six months after the date of submission of [an EPA study]"). In addition, the Bevill Amendment required EPA to study

potential regulation of mining wastes, submit a report to Congress, and then either regulate mining wastes or determine regulations are unwarranted. *Id.* § 6921(b)(3)(C).

EPA conducted this study and determined that applying Subtitle C controls to wastes from ore and mineral extraction was likely to be environmentally unnecessary, technically infeasible, economically impractical, and therefore unwarranted. *Regulatory Determination for Wastes from the Extraction and Beneficiation of Ores and Minerals*, 51 Fed. Reg. 24,496 (1986); 40 C.F.R. § 261.4(b)(7) (codifying the mining waste exemption). Despite this finding, the agency expressed concern "about the certain actual and potential mining waste problems" and described "plans to develop a program for mining waste under Subtitle D of RCRA." *Id.* These plans included that, should EPA be unable to develop an effective mining waste program under Subtitle D, it may revert to Subtitle C authority. *Id.* However, because this alternative mining waste plan was never implemented and the EPA never designated Subtitle C as the applicable authority, the regulation of mining wastes now falls under the category of solid waste and the purview of RCRA Subtitle D. *Env't Def. Fund*, 852 F.2d at 1316 ("At this point, we do not find that EPA has taken unreasonable action in its determination to regulate extraction and beneficiation wastes under Subtitle D."); *Friends of Santa Fe v. LAC Minerals, Inc.*, 892 F. Supp. 1333, 1342 (D.N.M. 1995) ("The 1986 regulation is clear: mining overburden . . . is exempt from subtitle C regulation.").

The Court next analyzes whether Defendant has violated 42 U.S.C. § 6972(a)(1)(A) by participating in open dumping as set forth in RCRA Subtitle D. Defendant first argues that RCRA is not enforceable against the WVDEP because the agency did not introduce any contaminants to the site. Though RCRA broadly prohibits "any solid waste management practice or disposal of solid waste . . . which constitutes . . . open dumping," this provision is only enforceable against persons "engaged in the act of open dumping." 42 U.S.C. 6945(a). Defendant points to *Town &*

*Country Co-Op, Inc. v. Akron Production Co.*, No. 1:11-cv-2578, 2012 WL 1668154 (N.D. Ohio May 11, 2012), for the proposition that RCRA bars only the present act of introducing a contaminant exceeding the MCL, not the MCL exceedance itself. *Id.* at *6, *quoted in* Mem. of Law in Supp. of Def. Harold Ward's Mot. for Summ. J. at 9, ECF No. 96; *see also S. Rd. Assocs. v. Int'l Bus. Machines Corp.*, 216 F.3d 251, 257 (2d Cir. 2000) ("[T]he movement of soil (with or without contaminants) from here to there pursuant to a state-sponsored or state-authorized plan or program does not constitute 'introduction' for the purposes of RCRA."). Because WVDEP has not introduced any additional contaminants to the site, Defendant Ward contends it could not have engaged in the act of open dumping under the statute. Mem. of Law in Supp. of Def. Harold Ward's Mot. for Summ. J. at 9, ECF No. 96.

This argument fails, however, given that Defendant Ward has constructed and operated ditches and impoundments at the Subject Property that had the potential to—if not the actual effect of—bringing contaminants together in greater concentrations, that is, making exceedances worse. *S. Rd. Assoc. v. Int'l Bus. Mach. Corp.*, 216 F.3d 251, 257 (2d Cir. 2000) (recognizing that while a tenant moving soil from one place to another pursuant to state-sponsored or state-authorized remediation plan did not constitute "introduction" of waste under RCRA, making an exceedance worse would support a cognizable claim). As alleged in the Amended Complaint, the agency could have at least introduced greater concentrations of contaminants (if not the contaminants themselves) by constructing ditches, drying pits, and surface impoundments. Defendant tries to distinguish between adding contaminants to the site and WVDEP's activities in grouping contaminants together, but this is a distinction without a difference. The WVDEP was not a passive observer at the Subject Property—rather, the agency was, for all intents and purposes, running a solid waste management facility, as it actively constructed and operated structures to store, treat,

-12-

and dispose of solid wastes. *See* 42 U.S.C. § 6904(29) (defining a "solid waste facility as "any facility for the . . . storage, transportation, . . . treatment or disposal of solid wastes . . . whether such facility is associated with facilities generating such wastes or otherwise."). The agency is, therefore, subject to regulations aimed at solid waste management facilities.

In the alternative, Defendant argues that WVDEP's reclamation activities do not constitute open dumping, as Subtitle D excludes facilities and practices that result in industrial discharges from a NPDES-permitted point source from its open dumping criteria. Mem. of Law in Supp. of Def. Harold Ward's Mot. for Summ. J. at 8, ECF No. 96. He further argues there is no evidence that WVDEP violated the open dumping criteria, as no contaminants in excess of their specified MCL have been detected at the Subject Property. *Id.* at 10. The Court agrees with both arguments.

Addressing the first argument, the Court finds that WVDEP did not violate RCRA's open dumping provision, as the groundwater and floodplain criteria for open dumping do not apply to WVDEP's facilities and practices on the Subject Property. RCRA defines an open dump as "any facility or site where solid waste is disposed of which is not a sanitary landfill which meets the criteria promulgated under § 6944 of this title and which is not a facility for disposal of hazardous waste." 42 U.S.C. § 6903(14). 42 U.S.C. § 6944(a), in turn, instructs the EPA to consult with states and "promulgate regulations concerning criteria for determining which facilities shall be classified as sanitary landfills and which shall be classified as open dumps." *Id.* However, the provision also sets a floor for distinguishing between sanitary landfills and open dumps: a sanitary landfill should be classified as such "only if there is no reasonable probability of adverse effects on health or the environment from disposal of solid waste." *Id.* In sum, while 42 U.S.C. § 6944(a) directs the EPA to set forth criteria to classify open dumps, it requires that the criteria, at a minimum, encompass facilities deemed to cause a reasonable probability of adverse effects on health or the environment.

-13-

Pursuant to these instructions, the EPA set forth regulations to clarify the bounds of open dumping under Subtitle D and identify facilities likely to cause adverse effects on health or the environment. In 40 C.F.R. § 257.1(a)(1), the agency defines an open dump as a facility or practice that fails to satisfy any of the criteria set out in 40 C.F.R. § 257.3 These criteria in pertain to a variety of facilities and practices with probable adverse effects, including disposing of waste in floodplains (40 C.F.R 257.3-1), contributing to the taking of threatened or endangered species (40 C.F.R. § 257.3-2), discharging pollutants into a water of the United States in violation of the CWA (40 C.F.R. § 257.3-3), and contaminating an underground drinking water source (40 C.F.R. § 257.3-4). The regulations contain exceptions for certain facilities and practices, however, noting that "[t]he criteria do not apply to industrial discharges which are point sources subject to permits under § 402 of the CWA." 40 C.F.R. § 257.1(c)(6).[3]

Plaintiffs first argue that the exception in 40 C.F.R. § 257.1(c)(6) applies only narrowly—that is, to the specific discharge from a permitted point source rather than WVDEP's facilities and practices at-large. Pls.' Resp. in Opp. to Def. Sec. Harold Ward's Mot. for Summ. J. at 11, ECF No. 103. They support this contention by looking at an exclusion for point source discharges in Subtitle C, arguing it can be used to shed light on the exclusion in Subtitle D. *Id.* at 13-14. Similar to Subtitle D, Subtitle C contains a provision that excludes "point source discharges subject to regulation under the CWA" from the definition of "solid waste." 40 C.F.R. § 261.4(a)(2). Subtitle C, however, contains a comment that the exclusion should be applied "only to the actual point

---

[3] While Plaintiffs refer to this exclusion a "permit shield" defense, the Court notes the exclusion under Subtitle D of RCRA is substantially different from a permit shield under the CWA. Pls.' Resp. in Opp. to Def. Sec. Harold Ward's Mot. for Summ. J. at 4, ECF No. 103. A permit shield under the CWA, 33 U.S.C. § 402(k), dubs compliance with a permit as compliance with the CWA. Conversely, Subtitle D of RCRA does not apply its open dumping criteria to "industrial discharges which are point sources subject to permits under § 402 of the CWA." 40 C.F.R. § 257.1(c)(6). The two, therefore, are not interchangeable.

source discharge" and "does not exclude industrial wastewaters while they are being collected, stored or treated before discharge, nor does it exclude sludges that are generated by industrial wastewater treatment." *Id.* Plaintiffs argue that Subtitles C and D are "parallel, identically worded provisions" such that the comment in Subtitle C applies equally to Subtitle D. Pls.' Resp. in Opp. to Def. Sec. Harold Ward's Mot. for Summ. J. at 13, ECF No. 103.

The Court finds the presence of the comment in Subtitle C and the absence of it in Subtitle D indicate just the opposite: that the comment was not meant to apply to the exclusion in Subtitle D. When interpreting a regulation, a court should "proceed in the same way [it] would when interpreting any other written law. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2446 (2019) (Gorsuch, J., concurring). As the Supreme Court has also noted, a lawmaker is presumed to act "intentionally and purposely when [] includ[ing] particular language in one section of a statute but omit[ting] it in another.'" *City of Chicago v. Env't Def. Fund*, 511 U.S. 328, 338 (1994) (quoting *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993)). The Court, therefore, interprets the omission of the comment in Subtitle D as intentional. Applying the comment to point sources subject to Subtitle C but not to Subtitle D makes sense—Subtitle C is meant to be a more stringent set of guidelines to protect human health and the environment from hazardous waste. It would therefore be logical to regulate more material, i.e., narrow the exclusion, where that material has greater potential for harm.

Further, contrary to Plaintiffs' contention that Subtitles C and D are "identical" and "parallel-worded," the two provisions differ in what is being excepted and how the exception applies the CWA. In terms of what is being excepted, the provision in Subtitle D refers to facilities and practices to which the criteria for open dumping do not apply, 40 C.F.R. § 257.1(c) ("These criteria apply to all solid waste disposal facilities and practices with the following exceptions"),

-15-

while the provision in Subtitle C refers to materials that do not constitute solid wastes, 40 C.F.R. § 261.4(a) ("The following materials are not solid wastes for the purpose of this part"). In other words, Subtitle D exempts facilities and practices, while Subtitle C only limits what materials that constitute "solid waste." This distinction further aligns with the more narrow exclusions in Subtitle C, as exempting a certain type of material at a given site results in more material being regulated than exempting a facility or practice.

In terms of how the provisions apply the CWA, Subtitle D refers to "[i]ndustrial discharges which are point sources subject to *permits* under § 402 of the CWA," 40 C.F.R. § 257.1(c)(6) (emphasis added), while Subtitle C refers to "[i]ndustrial wastewater discharges that are point source discharges subject to *regulation* under section 402 of the CWA," 40 C.F.R. § 261.4(a)(2) (emphasis added). Notwithstanding any distinction between "point sources" and "point source discharges," the operative difference between the two appears to be that Subtitle C refers to industrial discharges subject to regulation, whereas Subtitle D refers to industrial discharges subject to permits. The EPA has interpreted the "subject to regulation" language to refer to point sources that "*should* have a NPDES permit in place, whether in fact they do or not."[4] *Interpretation of Industrial Wastewater Discharge Exclusion from the Definition of Solid Waste*, 1995 WL 911821, at *1. Conversely, the Subtitle D language only applies to facilities and practices actually subject to a NPDES permit, rather than CWA liability at-large.

As the EPA clarified, Subtitle C's exclusion of industrial discharges subject to CWA regulation is not meant to absolve alleged polluters entirely—rather, it was meant to avoid overlap of regulatory schemes, as "[u]nder EPA's interpretation of the 'subject to' language, a facility that

---

[4] Courts have also adopted this interpretation. *See, e.g., Inland Steel Company v. EPA*, 901 F.2d 1419, 1423 (7th Cir.1990); *State v. PVS Chems., Inc.*, 50 F. Supp. 2d 171, 178 (W.D.N.Y. 1998).

should, but does not, have the proper NPDES permit is in violation of the CWA, not RCRA." *Id.* Moreover, as Defendant Ward points out, Subtitle C considerably narrows the scope of what constitutes a "point source." Resp. to Pls.' Sub. of Caselaw Regarding 40 C.F.R. § 257.3-3 at 2, ECF No. 123. EPA's NPDES regulations define point sources to include any "ditch . . . from which pollutants are or may be discharged" and "discharge of pollutants" to include "surface runoff which is collected or channeled by man." 40 C.F.R. § 122.2. However, though Subtitle C refers to "point source discharges," the comment clarifies that the exclusion does not include "industrial wastewaters while they are being collected, stored or treated before discharge." 40 C.F.R. § 261.4(a)(2). Given the desire to avoid overlap between the CWA and RCRA and Subtitle's C narrower use of "point source," Subtitle C's exclusion of all point source discharges subject to regulation, rather than subject to permits, does not unduly expand its scope.

Plaintiffs' groundwater and floodplain theories of violation, then, must also be rejected. The facilities and practices at the Subject Property are excluded from the open dumping criteria, so there can be no violation of the groundwater or floodplain criteria for open dumping. The regulations are clear that "[t]he criteria do not apply to industrial discharges which are point sources subject to permits," 40 C.F.R. § 257.1(c)(2); *see also* 40 C.F.R. § 257.1(c) ("These criteria apply to all solid waste disposal facilities and practices with the following exceptions"). Given that "open dumping" is demarcated as facilities and practices that do not meet the criteria and the criteria do not apply here, WVDEP's facilities and practices at the Subject Property cannot constitute open dumping.[5]

_____

[5] At the pretrial motions hearing, the Court questioned whether the criteria were worded such that they could apply only to discharge from a point source. In doing so, the Court referred to the criteria for surface water under 40 C.F.R. § 257.3-3, asking why it encompasses facilities and practices if, as Plaintiffs argue, it was meant to only apply to the discharge of a point source. In response, Plaintiffs submitted a list of cases and an explanation that violations of this section,

Count II would still fail even without this exclusion though. Plaintiffs presented only the groundwater theory of violation in the Amended Complaint and Notice of Violation—it is only when responding to summary judgment that they attempt to tack on the floodplain theory as well. Pls.' Resp. in Opp. to Def. Sec. Harold Ward's Mot. for Summ. J. at 17-19, ECF No. 103. Neither theory holds weight though. In terms of the groundwater theory, Plaintiffs have not produced any evidence of an exceedance at the Subject Property such that it would violate open dumping criteria in Subtitle D. In terms of the floodplain theory, Plaintiffs introduce it too late in the game, such that it constitutes an impermissible attempt to amend the complaint.

Though Plaintiffs pleaded the groundwater theory of violation from the get-go, they have presented no evidence suggesting that WVDEP violated this criteria. The groundwater criteria indicate that any "facility or practice [that] contaminate[s] an underground drinking water source" constitutes an open dump. 40 C.F.R. § 257.3-4(a). It defines "contaminate" as the act of introducing a substance that would cause "[t]he concentration of that substance in the ground water to exceed the maximum contaminant level specified in appendix I." *Id.* § 257.3-4(c)(2)(i). At the summary judgment stage, Plaintiffs have only alleged a beryllium exceedance as grounds for a violation of groundwater criteria. Am. Compl. ¶ 88, ECF No. 41; Dr. Simonton Sworn Opening Expert Report, ¶ 52, ECF No. 94-2. However, as both Defendant Ward and Plaintiffs have noted, appendix I specifies no MCL for beryllium. Mem. of Law in Supp. of Def. Harold Ward's Mot. for Summ. J. at 11, ECF No. 96; Pls.' Resp. in Opp. to Def. Sec. Harold Ward's Mot. for Summ.

---

and this section only, should be addressed under the CWA rather than RCRA. Pls.' Submission of Caselaw Authorities at 4-5, ECF No. 121. While the Court appreciates this Submission, it notes that the enforcement mechanism of the surface water criteria is not at issue here. Rather, the Court was pointing out that, assuming the exclusion did not exist, the criteria could apply to it only if it were interpreted as referring to a facility or practice, rather than just a point source discharge.

J. at 21-22, ECF No. 103. Defendant Ward cannot have caused an exceedance of an MCL that does not apply.

Second, Plaintiffs' floodplain theory of violation fails because it was not pleaded in the Amended Complaint, ECF No. 41, or referred to in the Notice of Violation, ECF Nos. 41-1 and 41-2. Rather, the Amended Complaint and Notice of Violations merely allege violations of groundwater contamination. "[A]sserting a new legal theory for the first time in opposing summary judgment amount[s] to constructive amendment of the amended complaint and thus unfairly prejudice[s] the defendant." *Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 946 (4th Cir. 2013). Further, constructive amendments to a complaint at the summary judgment stage "undermine the complaint's primary purpose, namely, to guide defendants' discovery and to put 'defendant[s] on notice of the evidence [they] need[] to adduce in order to defend against the plaintiff's allegations.'" *U.S. ex rel. DRC, Inc. v. Custer Battles, LLC*, 472 F. Supp. 2d 787, 796 (E.D. Va. 2007), *aff'd*, 562 F.3d 295 (4th Cir. 2009) (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000)). As Defendant notes, Plaintiffs' Amended Complaint contains neither the word "flood" or "floodplain," much less any reference to the applicable criteria in 40 C.F.R. § 257.3-1. Reply in Supp. of Def. Harold Ward's Mot. for Summ. J. at 5, ECF No. 108. This theory could not have been the subject of discovery on part of Defendant Ward, so asserting it at this late stage constitutes unfair prejudice.

As a final note, the Court addresses Plaintiffs' argument as to preemption, which they introduced at the pretrial motions hearing. There, Plaintiffs argued that to the extent West Virginia law excludes coal mining waste from its liner and leachate control and collection system requirements, that exclusion is preempted by RCRA's express instruction for states to regulate solid waste disposal. Namely, in his Surrebuttal, Defendant noted that the facilities in question

were not required to have a liner or leachate control systems under the West Virginia Solid Waste

Management Rule (WVSMR), W. Va. C.S.R. §§ 33-1-1 to 33-1-7. Def. Ward's Supplemental

Mem. in Supp. of Summ. J. at 5, ECF No. 119. Rather, these liner and leachate requirements only

apply to "industrial solid waste disposal facilities," and "[i]ndustrial solid waste . . . does not

include mining waste." *Id.* (citing W.Va. C.S.R. §§ 31-1-5.5, 33-1-2). Plaintiffs, however, argued

against this notion at the pretrial motions hearing, noting that RCRA requires states to develop a

plan to dispose of hazardous and solid waste that, at minimum, (1) prohibits the establishment of

new open dumps and (2) requires that all solid waste be disposed of in a sanitary landfill. 42 U.S.C.

§ 6943(a)(2). They contend that if West Virginia's state disposal plan does not prohibit the

establishment of new open dumps or the remediation of old ones, then its plan directly conflicts

with RCRA.

   "Pre-emption . . . is compelled whether Congress' command is explicitly stated in the

statute's language or implicitly contained in its structure and purpose." *Gade v. National Solid*

*Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (plurality opinion) (citations omitted). There are three

types of preemption: (1) where a statute contains "explicit preemptive language," (2) "where the

scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left

no room for the States to supplement it," and (3) "where compliance with both federal and state

regulations is a physical impossibility, or where state law stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citations

omitted).

   Here, there is no evidence of any preemption of state solid waste law. Rather, as the Fourth

Circuit has noted, RCRA "seems to contemplate state law action, rather than preempt it in its

entirety." *Feikema v. Texaco, Inc*., 16 F.3d 1408, 1413 (4th Cir. 1994). This is because RCRA

calls for "a cooperative effort among the Federal, State, and local governments and private enterprises." *Id.* (quoting 42 U.S.C. § 6902(b)). Moreover, RCRA provides that a state program can operate "in lieu of" the RCRA if the EPA formally approves the state program. 42 U.S.C. § 6991c(d)(2). "When a State elects to establish its own program, the EPA suspends its federal permit program and defers to the State's." *Sierra Club v. Virginia Elec. & Power Co.*, 903 F.3d 403, 407 (4th Cir. 2018). Because "the state program essentially replaces the federal regulations . . . no conflict between the state and federal program will exist." *Boyes v. Shell Oil Prod. Co.*, 199 F.3d 1260, 1268 (11th Cir. 2000). By Plaintiffs' own admission, the EPA has approved West Virginia's Solid Waste Management plan, which includes both the WVSMR and the West Virginia Solid Waste Management Act, W. Va. Code §§ 22-15-1 to 22-15-24. Am. Compl. ¶ 100. ECF No. 41. Therefore, there is no conflict between the state and federal regulations.

Ultimately, because the open dumping criteria do not apply here, the WVDEP's actions do not constitute open dumping under Subtitle D or a violation of RCRA § 6972(a)(1)(A). Even if the open dumping criteria did apply though, there is no genuine dispute of material fact as to an exceedance of an MCL—Plaintiffs have only alleged an exceedance of an MCL for beryllium that does not apply. The Court therefore **GRANTS** Defendant Ward's Motion to Dismiss as to Count II.

      *b.   Count III*

Similar to Count II, there is no evidence that WVDEP's reclamation activities at the site caused or contributed to imminent and substantial endangerment to health or the environment as defined by RCRA. Plaintiffs initially centered this claim on a groundwater theory similar to the one laid out in Count II—namely, that Defendant Ward has contributed or is contributing to an imminent and substantial endangerment by handling and disposing of solid waste in unlined

surface impoundments, ditches, and drying pits. Am. Compl. ¶ 110, ECF No. 41; Notice of Endangerment, ECF No. 1-2. In their Response to Defendant Ward's motion for summary judgment, however, Plaintiffs attribute the imminent and substantial endangerment to the in-stream location of unlined impoundments rather than groundwater contamination, claiming the impoundments contain higher concentrations of aluminum and are especially susceptible to washing out during flood events. Pls.' Resp. in Opp. to Def. Sec. Harold Ward's Mot. for Summ. J. at 19, ECF No. 103. They reason that since Spruce Run is already adversely impaired due to aluminum, a washout of the impoundments would add even more aluminum to the waterway and pose an imminent and substantial endangerment to wildlife and water resources. *Id.* (citing Dr. Simonton Decl. ¶ 26, ECF No. 103-1).

Both theories fail for substantially the same reasons as those underlying the claim under RCRA § 6972(a)(1)(A). Just as with their groundwater theory of contamination in Count II, Plaintiffs have not supported their claim that Defendant Ward contributed to an imminent and substantial danger by exceedances of the groundwater criteria. And just as with their floodplain theory of violation in Count II, Plaintiffs assert the aluminum washout theory too late, such that it constitutes an impermissible attempt to constructively amend the complaint.

In addition to the citizen suit provision detailed in Section I.A., *supra*, RCRA allows private citizens to bring an action against any person "who has contributed to or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid waste which may present an imminent and substantial endangerment to human health or the environment." 42 U.S.C. § 6972(a)(1)(B). Unlike the claim under RCRA § 6972(a)(1)(A) in Count II, a plaintiff alleging "imminent and substantial endangerment" under RCRA § 6972(a)(1)(B) need not show any violations of a RCRA-based permit. *Goldfarb*, 791 F.3d at 505.

While a claim under § 6972(a)(1)(B) does not require showing any violation of a RCRA-based permit, the Court notes that Counts II and III overlap.  As outlined in Section I.A., *supra*, Subtitle D defines open dumps as a facility or site that is not a sanitary landfill. 42 U.S.C. § 6903(14). A sanitary landfill, in turn, refers to facilities where "there is no reasonable probability of adverse effects on health or the environment from disposal of solid waste." 42 U.S.C. § 6944(a). The EPA, via the criteria for open dumping set out in 40 C.F.R. § 257.3, identified those facilities and practices that result in a reasonable probability of adverse effects. Because WVDEP has not engaged in open dumping under the applicable regulations, it follows that the facilities or practices on the Subject Property do not meet the definition of having a reasonable probability of adverse effects on health or the environment. In other words, it would be difficult for WVDEP to contribute to an imminent and substantial endangerment without its facilities or practices also having a reasonable probability of adverse effects.

Count III also fails because there is no genuine dispute of material fact that the threat is imminent or substantial. In the Amended Complaint and Notice of Violation, Plaintiffs base this claim on the same conduct alleged in Count II, namely that WVDEP's use of unlined structures at the Subject Property has or will contaminate groundwater and eventually surface water. Am. Compl. ¶ 110, ECF No. 41; Notice of Endangerment, ECF No. 1-2. While Plaintiffs later present a theory of violation based on a potential washout, the Court notes that this theory was neither pleaded in the Amended Complaint, ECF No. 41, nor referred to in the Notice of Endangerment, ECF No. 1-2, meaning that summary judgment is appropriate for the same reasons applying to Plaintiffs' floodplain theory of violation in Count II, *see* Section I.A., *supra*.

However, even assuming, *arguendo*, that both theories were sufficiently pleaded, there is no evidence that Defendant Ward is contributing or has contributed to an imminent and substantial

endangerment under the statute. A plaintiff can prevail on this claim by demonstrating that (1) the defendant is a person who owned or operated of a solid waste treatment, storage, or disposal facility, (2) the defendant contributed to or is contributing to the handling, storage, treatment, transportation, or disposal of solid waste, and (3) the solid waste may present an imminent and substantial endangerment to health or the environment. *Courtland Co. v. Union Carbide Corp.*, No. 2:18-CV-01230, 2022 WL 2400038, at \*44 (S.D.W. Va. July 1, 2022) (citing *Parker v. Scrap Metal Processors, Inc.*, 386 F. 3d 993, 1014-15 (11th Cir. 2004)).

"'Imminent' means that there is a present threat now," even if the impact of that threat may not be felt until later, while "substantial" means there is "reasonable cause for concern that someone or something may be exposed to risk of harm by a release or threatened release of hazardous substances in the event remedial action is not taken." *Lovejoy v. Amcox Oil & Gas, LLC*, No. 2:20-CV-00537, 2022 WL 17566235, at \*12 (S.D.W. Va. Dec. 9, 2022) (quoting *Price v. U.S. Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994) and *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1021 (10th Cir. 2007)). "'[E]ndangerment' means 'a threatened or potential harm and does not require proof of actual harm.'" *Id.* (quoting *Price*, 39 F.3d at 1019).

Because both "may" and "endangerment" are probabilistic terms, courts have held that "a reasonable prospect of future harm is adequate to engage the gears of [§ 6972(a)(1)(B)] so long as the threat is near-term and involves potentially serious harm." *Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 211 (2d Cir. 2009) (quoting *Me. People's All. v. Mallinckrodt, Inc.*, 471 F.3d 277, 296 (1st Cir. 2006)). However, summary judgment is appropriate where a plaintiff has (1) established only a speculative prospect of future harm and (2) has not provided sufficient information for a reasonable factfinder to find the harm at issue rises to the level of substantial endangerment. *Id.* at 214. Further, the mere presence of contaminants alone,

even at high concentrations, does not constitute an imminent and substantial endangerment. *Lovejoy*, 2022 WL 17566235, at *12 (quoting *Me. People's All.*, 471 F.3d at 282).

For example, in *Metacon Gun Club*, neighboring homeowners did not sufficiently establish an imminent and substantial endangerment when alleging a RCRA violation against the owner of a gun range, as the homeowners' expert witness had merely concluded that the presence of lead on the site "represents a potential exposure risk to both humans and wildlife." 575 F.3d at 211 (emphasis omitted). Because this expert witness never conducted a risk assessment and the gun range had presented conflicting testimony, the record as the magnitude of possible risk was insufficient, thereby warranting summary judgment. *Id.*

Similarly, Plaintiffs here have not provided enough information to allow a factfinder to conclude the danger of such a washout or groundwater contamination is either imminent or substantial. Though they present the reports of their expert, Dr. Simonton, these reports contain only conclusory statements that unverified exceedances of contaminants could endanger the environment. Simonton Decl. ¶¶ 33, 34, ECF No. 103-1; *Id.* at 167; Simonton Report ¶¶ 17, 19, 21-28, ECF No. 94-2. Plaintiffs, therefore, have failed to provide sufficient information as to the magnitude of potential risk as to groundwater contamination or aluminum exposure due to a flood event. Without such information as to the actual degree of risk at the site, Plaintiffs have not supplied a factfinder with sufficient information to find the Subject Property presents an imminent and substantial endangerment to health or the environment.

Because Plaintiffs have not adequately supplied the record with sufficient information as to an imminent and substantial endangerment under RCRA § 6972(a)(1)(B), the Court **GRANTS** Defendant Ward's Motion for Summary Judgment as to Count III.

II.    Claim Arising Under the CWA

Summary judgment is also appropriate as to Count IV under the CWA. The Federal Water Pollution Control Act, or the CWA, seeks "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To further this goal, the Act prohibits the "discharge of any pollutant by any person" unless the point source is the subject of a NPDES permit. 33 U.S.C. §§ 1311(a), 1342. NPDES allows the EPA or an authorized state agency to issue a permit for the discharge of any pollutant, provided that the discharge complies with the conditions of the CWA. 33 U.S.C. § 1342. Under 33 U.S.C. § 1342(b), states can administer a state-run NPDES program following EPA approval. West Virginia received such approval, 47 Fed. Reg. 22,363 (May 10, 1983), and issues NPDES permits pursuant to the West Virginia Water Pollution Control Act (WVWPCA), W. Va. Code §§ 22-11-1 to 22-11-30.

Defendant argues that summary judgment is appropriate for two reasons. First, Defendant Ward contends that *County of Maui* forecloses relief on Count IV, as it specified that a CWA violation due to groundwater only occurs where the conveyance is the "functional equivalent of a direct discharge." Mem. of Law in Supp. of Def. Harold Ward's Mot. for Summ. J. at 13, ECF No. 96 (quoting *Cnty. of Maui*, 140 S. Ct. at 1476). Second, Defendant Ward argues that Count IV fails under the CWA's permit shield—because the CWA allows that "compliance with a permit . . . shall be deemed compliance, for purposes of [citizen suits] under the CWA," Defendant Ward cannot be liable for a violating the statute sans evidence that the WVDEP has violated its NPDES permit. *Id.* at 14 (quoting 33 U.S.C. § 1342(k)).

While Plaintiffs originally put forth a groundwater theory of violation under the CWA, Am. Compl. ¶¶ 112-23, ECF No. 41, they now change course, alleging that Ditch 2 is discharging directly into Right Fork Spruce Run, Pls.' Resp. in Opp. to Def. Sec. Harold Ward's Mot. for

Summ. J. at 28-30, ECF No. 103. They allege that Ditch 2, constructed and operated by WVDEP, constitutes an unpermitted direct discharge into a water of the United States. *Id.* Defendant Ward responds that Plaintiffs' pivoting from the groundwater theory to a direct discharge one exceeds the scope of allegations in the Amended Complaint, as well as pre-suit notice. Reply in Supp. of Def. Harold Ward's Mot. for Summ. J. at 11-12, ECF No. 108.

The Court addresses the adequacy of pre-suit notice first. The CWA allows citizen suits so long as a plaintiff has given notice of the alleged violation to the EPA, the state, and any alleged violator at least sixty days before commencing the suit. 33 U.S.C. § 1365(b)(1)(A). Notice of an alleged violation must contain:

> [S]ufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a). The CWA's notice requirement is a mandatory condition precedent to commencing a suit under the Act. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 399 (4th Cir. 2011) (citing *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989)). However, the Fourth Circuit has warned against an "overly technical application of regulatory requirements," noting that sufficient notice does not require a citizen plaintiff to "list every specific aspect or detail or every alleged violation." *Id.* at 400 (quoting *Pub. Int. Rsch. Grp. of N.J. v. Hercules, Inc.*, 50 F.3d 1239, 1248 (3d Cir. 1995)). Rather, citizen plaintiffs need only provide alleged violators with enough information to allow them to correct the violation and avoid the suit. *Id.*

For example, in *Atlantic States Legal Foundation, Inc. v. Stroh Die Casting Co.*, 116 F.3d 814 (7th Cir. 1997), notice was sufficient where it asserted violations of a specific permit requirement, even though it did not specify a specific point source where

-27-

noncompliance was occurring. *Id.* at 820. There, an environmental group had provided adequate notice where it informed the alleged polluter that its handling of wastewater did not comply with the CWA. *Id.*; *see also Hercules, Inc.*, 50 F.3d at 1248 ("We find that notice of one facet of an effluent infraction is sufficient to permit the recipient of the notice to identify other violations arising from the same episode.").

Here, Plaintiffs' letter provided sufficient notice of the alleged CWA violation at Ditch 2, as it informed Defendant Ward that WVDEP's handling of AMD violated that CWA. The Notice of Violation pursuant to 33 U.S.C. § 1365(b) specifies that solid waste disposal on the property was causing loss of beneficial uses of both groundwater and surface water at the site. Notice of Violation at 2, ECF No. 41-2; *see also id.* at 3 ("Coal mining activities have caused and continue to cause impairments to the Right Fork of Spruce Run from unpermitted discharge from past mining discharges . . . . This contaminated surface water . . . is contributing to the significant impairments of [two nearby streams]."). Further, though the Notice of Violation mainly describes discharge via groundwater from Ditch 2, it also notes that Ditch 2 both collects contaminated AMD and discharges directly into the Right Fork Spruce Run and Spruce Run. *Id.* at 5.

Though the Notice of Violation provided sufficient notice to Defendant Ward as to the nature of the violation, the Amended Complaint does not. Namely, it does not allege a direct discharge from Ditch 2 in violation of the CWA. Rather, it identifies the "unlined drainage ditches" as "point sources," Am. Compl. ¶ 119, ECF No. 41, and claims that WVDEP has been allowing "discharge [of pollutants] . . . from each of the . . . unlined ditches on the Subject Property via groundwater." *Id.* ¶ 121. This discharge via

groundwater, the Amended Complaint alleges, constitutes the "functional equivalent" of a direct discharge from an unpermitted source. *Id.*

In responding to Defendant Ward's Motion for Summary Judgment though, Plaintiffs change course—rather than establishing that groundwater seepage is the functional equivalent of a discharge, they instead argue that Ditch 2 discharges directly into Right Fork Spruce Run. Pls.' Resp. in Opp. to Def. Sec. Harold Ward's Mot. for Summ. J. at 28, ECF No. 103. Just as with Count II, Plaintiffs' argument of direct discharge constitutes an impermissible attempt to constructively amend the Amended Complaint. *See Harris,* 523 F. App'x at 946; *Custer Battles*, 472 F. Supp. 2d at 795-96. Because Plaintiffs have failed to show a genuine dispute of material fact, namely that the groundwater seepage is the functional equivalent of a direct discharge, the Court need not reach Defendant's argument as to a permit shield.

Because Plaintiffs have failed to establish that the groundwater seepage constitutes the functional equivalent of a discharge under the CWA, the Court **GRANTS** summary judgment to the Defendant Ward as to Count IV.

## CONCLUSION

Defendant Ward is entitled to summary judgment on all remaining claims against him. Regarding Count II, the criteria for open dumping under RCRA Subtitle D do not apply to facilities and practices with industrial discharges subject to NPDES permits. Defendant Ward, therefore, has not violated RCRA by engaging in open dumping. Count III also fails, as Plaintiffs have not provided sufficient information from which a reasonable factfinder could find the harm at issue rises to the level of imminent or substantial endangerment under RCRA. Finally, Count VI fails because Plaintiffs have not established there is a genuine dispute of material facts that the

groundwater seepage constitutes the functional equivalent of a direct discharge. For these reasons, the Court **GRANTS** Defendant Ward's Motion for Summary Judgment. ECF No. 95.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:          February 21, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE