IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

LIVING LANDS, LLC,
a West Virginia Limited Liability Company,
D. C. CHAPMAN VENTURES, INC.
a West Virginia Business Corporation,

                Plaintiffs,

v.                                                CIVIL ACTION NO.  3:20-0275

JACK CLINE,
an Individual West Virginia Resident;
BRADY CLINE COAL CO.,
a dissolved West Virginia Business Corporation,
solely to the extent of its undistributed assets,
specifically including the remaining limits of its
available liability coverage under liability insurance
policies covering it and its officers and directors;
SPRUCE RUN COAL COMPANY,
a dissolved West Virginia Business Corporation,
solely to the extent of its undistributed assets,
specifically including the remaining limits of its
available liability coverage under liability insurance
policies covering it and its officers and directors;

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs' Motion for Reconsideration of the Court's Order Granting Defendant Secretary Ward's Motion for Summary Judgment. ECF No. 132. In this Motion, Plaintiffs ask the Court to reconsider the Memorandum Opinion and Order entered on February 21, 2023, which granted summary judgment to Defendant Ward on all remaining counts against him. *Id.* (citing *Living Lands, LLC v. Cline*, No. 3:20-0275, 2023 WL 2142981 (S.D.W. Va. Feb. 21, 2023)). For the reasons below, the Court **DENIES** this Motion. *Id.*

Also pending is Defendant Ward's Motion to Certify Orders Under Rule 54(b). ECF No. 130. Because the Court has granted summary judgment on all remaining claims against Defendant Ward, and for the reasons below, the Court **GRANTS** this Motion. *Id.*

## LEGAL STANDARD

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, this Court "retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003). Although Rule 54(b) gives the Court flexibility to revise its interlocutory orders, its "discretion is subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (internal quotation marks and citation omitted). Therefore, "a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Id.* (internal quotation marks and citation omitted).

## DISCUSSION

I. Plaintiffs' Motion to Reconsider

Plaintiffs base their Motion to reconsider on two alleged errors in the Court's Memorandum Opinion and Order granting summary judgment as to all remaining claims against Defendant Ward. First, Plaintiffs cite an interpretive memo issued by the EPA in 1995 to argue that the Court committed clear legal error in finding that the industrial discharge exclusion in the Resource Conservation and Recovery Act (RCRA) Subtitle D applies to Defendant Ward's activities at the Subject Property. Pls.' Mem. in Supp. of their Mot. for Reconsideration at Sec. II.a, ECF No. 133.

Second, Plaintiffs argue that the Court did not address their theories of violation of RCRA, 42 U.S.C. § 6972(a)(1)(A) based on violations of the West Virginia Solid Waste Management Act (WVSWMA) and the West Virginia Solid Waste Management Rule (WVSWMR). *Id.* at Sec. II.b. The Court addresses each of these arguments in turn.

    A. *The EPA Interpretive Memo does not provide guidance on RCRA Subtitle D.*

Starting with the interpretive memo, Plaintiffs argue that the Court has committed a clear legal error by not adequately considering an interpretive memo published by the EPA in 1995. *Id.* at 5 (citing *Interpretation of Industrial Wastewater Discharge Exclusion from the Definition of Solid Waste*, 1995 WL 911821, at *1). In particular, Plaintiffs argue that Subtitle D's industrial discharge exclusion should not apply to the WVDEP's activities at the Subject Property, as the memo provides that "discharges of leachate from waste management units to groundwater are not excluded from the definition of solid waste in RCRA section 1004(27)," a provision applicable to both Subtitles C and D. *Interpretation of Industrial Wastewater Discharge Exclusion from the Definition of Solid Waste*, 1995 WL 911821, at *1. This argument does not hold weight though—the interpretive memo speaks specifically to the industrial discharge exclusion in Subtitle C, and as clarified in the original Memorandum Opinion and Order granting summary judgment, Subtitles C and D of RCRA are not "identical, parallel-worded" provisions. *Living Lands,* 2023 WL 2142981 at *8.

Though Plaintiffs would still have the Court treat the industrial discharge exclusions in Subtitles C and D interchangeably, the Court declines to do so. Namely, Plaintiffs point to the memo's reference to a singular "exclusion" for industrial point source discharges, arguing this signals that the memo is "applicable to the entire RCRA program, and not to any differing versions of that exclusion in any particular subtitle." Pls.' Mem. in Supp. of their Mot. for Reconsideration

at 8, ECF No. 133. But this argument does not account for the text that follows: "[i]n interpreting and implementing this exclusion, the Agency promulgated a rule at 40 C.F.R. § 261.4(a)(2)"—that is, the industrial discharge exclusion of Subtitle C. *Interpretation of Industrial Wastewater Discharge Exclusion from the Definition of Solid Waste*, 1995 WL 911821, at *1. Subtitle C expressly notes that, "for purposes of the regulations implementing subtitle C," "[t]he definition of solid waste contained in this part applies only to wastes that also are hazardous." 40 C.F.R. § 261.1(b)(1). Given that this guidance explicitly cites Subtitle C and hinges on the definition of "solid waste" set forth therein, the Court finds it applicable only in interpreting the language of Subtitle C. *Living Lands,* 2023 WL 2142981 at *8. With this, the Court also rejects Plaintiffs' third argument as to the interpretive memo, in which they claim that the memo interprets the industrial discharge exclusion as a Congressional policy, and the EPA subsequently lacks "the legal authority to alter th[e] Congressional Policy" set forth in RCRA. Pls.' Mem. in Supp. of their Mot. for Reconsideration at 13, ECF No. 133. Because the memo does not provide guidance as to the industrial discharge exclusion in Subtitle D, the Court need not address whether the EPA has legal authority to alter any Congressional policy set forth in RCRA. *Id.*

Further, even if the memo were instructive as to Subtitle D, it would not alter the Court's conclusion as the applicability of Subtitle D's industrial discharge exclusion. As the Court has previously laid out, the exclusion in Subtitle D differs from the exclusion in Subtitle C in that it does not hinge on the definition of "solid waste." *Living Lands,* 2023 WL 2142981 at *8. This is because

> [i]n terms of what is being excepted, the provision in Subtitle D refers to facilities and practices to which the criteria for open dumping do not apply, 40 C.F.R. § 257.1(c) ("These criteria apply to all solid waste disposal facilities and practices with the following exceptions"), while the provision in Subtitle C refers to materials that do not constitute solid wastes, 40 C.F.R. § 261.4(a) ("The following materials are not solid wastes for the purpose of this part"). In other words, Subtitle D

>exempts facilities and practices, while Subtitle C only limits what materials that constitute "solid waste."

*Id.* It is immaterial, then, that the memo provides an interpretation of the definition of "solid waste," given that the exclusion in Subtitle D refers to facilities and practices that are excluded from open dumping.

Finally, in their motion to reconsider, Plaintiffs assert for the first time that recent EPA guidance indicates that the industrial discharge exclusions in Subtitles C and D should be treated the same. Pls.' Mem. in Supp. of their Mot. for Reconsideration at 13-14, ECF No. 133. There are two problems with this argument. First, though these materials have long been available, Plaintiffs failed to cite them in any of the extensive briefing allowed by this Court before it ruled on Defendant Ward's motion for summary judgment. *See, e.g.*, ECF Nos. 116, 122. Second, the guidance Plaintiffs cite arises as part of the EPA's specific regulation of coal combustion residual (CCR). *Relationship Between RCRA's CCR Rule and the CWA's NPDES Permit Requirements*, EPA, https://www.epa.gov/coalash/relationship-between-resource-conservation-and-recovery-acts-coal-combustion-residuals-rule (last updated June 21, 2022). The regulations pertaining to CCR detail separate groundwater monitoring requirements and other design and operation criteria, all of which would supplant any parallel regulations. Hazardous and Solid Waste Management System; Disposal of CCR from Electric Utilities, 80 Fed. Reg. 21,301 Apr. 17, 2015).

The Court's incorporation of the 1995 interpretive memo in its Memorandum Opinion and Order does not constitute clear legal error. Though the memo provides specific guidance as to the industrial discharge exclusion in Subtitle C, the Court declines to extend this guidance to Subtitle D. As laid out in its previous Memorandum Opinion and Order, the exclusions in the two subtitles have material differences such that they are not interchangeable. The Court, therefore, need not reconsider its previous finding.

B. *Defendant Ward did not violate the WVSWMR or the WVSWMA such that it constitutes a violation of RCRA § 6972(a)(1)(A).*

Moving to Plaintiffs' second basis for their motion to reconsider, the Court finds that there was no violation of the WVSWMA and WVSWMR to support a subsequent violation of RCRA § 6972(a)(1)(A). Because the Court indirectly addressed this theory of violation in its initial memorandum opinion and order, it will do so more directly now.[1] In their Amended Complaint, Plaintiffs presented several theories of violation to support Count II, which states a claim for a violation of RCRA § 6972(a)(1)(A). Section 6972(a)(1)(A) permits individuals to bring actions against "any person . . . alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to [RCRA]." In addition to their theory of violation based on RCRA Subtitle D, Plaintiffs alleged a theory of violation based

---

[1] Throughout proceedings, the Court has had difficulty tracking Plaintiffs' arguments—partly because those arguments seem to change in substance from one filing to the next, and partly because of the syntax through which those arguments are communicated. Though the Court has already cautioned Plaintiffs about including "unnecessarily lengthy quotations of statutes and regulations," Plaintiffs' recent Motion contains a number of just that. *See* Pls.' Mem. in Supp. of their Mot. for Reconsideration at 7-11, 14, ECF No. 133. Moreover, it is not surprising that the Court has struggled to track and address Plaintiffs' arguments when those arguments are unclearly communicated. Take, for example, the following sentence:
> Second, Plaintiff respectfully assert [sic] to this Court that one of its predicate [sic] to its holding in its Instant Order that the 'industrial point source exclusion' in RCRA Subtitle D excludes from the reach of RCRA Subtitle D discharges into the environment from facilities upstream of the facility with a NPDES permitted point source discharge, namely, the assertion that the exclusion in Subtitle D does not apply to point sources that should have a NPDES but that do not, is, according to USEPA's formal interpretation of its own RCRA regulations, incorrect as a matter of law.

*Id.* at 9. The Court had to read the sentence above a number of times to develop even a general sense of what it was trying to communicate. Plaintiffs are encouraged to edit their briefing more carefully so as not to unnecessarily confuse judicial review.

on the WVSWMA, W. Va. § 22-15-10(a) as implemented by WVSWMR, W. Va. C.S.R. §§ 33-1-1.6.a, 7.1.a, and 7.2.a.1.[2] Am. Compl. ¶¶ 23, 93-94, ECF No. 41.

Specifically, the WVSWMA, W. Va. Code § 22-15-10(a), makes it unlawful "for any person to create, contribute to, or operate an open dump or for any landowner to allow an open dump to exist on the landowner's property unless that open dump is under a compliance schedule approved by the director." It defines an open dump as "any solid waste disposal which does not have a permit under this article, or is in violation of state law, or where solid waste is disposed in a manner that does not protect the environment." WVSWMA, W. Va. Code § 22-15-2. The WVSWMR, W. Va. C.S.R. § 33-1-1.6.b, provides that "solid waste facilities or activities failing to satisfy this subsection are considered open dumps." Plaintiffs allege that Defendant Ward engaged in open dumping by "allowing any of the unlined Surface Impoundments, or any components of them, or the unlined Drying Pits to exist on the Subject Property." Am. Compl. ¶ 96, ECF No. 41. The unlined ditches, drying pits, and surface impoundments, they argue, constitute open dumps under WVSWMR, W. Va. C.S.R. § 33-1-7.2.a.1, which provides that "any site" where no protective measures have been taken "to prevent the discharge of pollutants from the accumulated waste into the waters of the State" constitutes an "open dump." *Id.* ¶¶ 96-97.

As Defendant Ward notes in the briefing for summary judgment, the WVDEP's activities at the Subject Property do not fall under the WVSWMA or WVSWMR's definition of "open dump." Def. Ward's Supp. Mem. in Supp. or Summ. J. at 3-4, ECF No. 119. These provisions

---

[2] In briefing to support their motion for reconsideration, Plaintiffs claim that "Count Two of their Amended Complaint asserts violations of WVSWMA . . . as implemented by WVSWMR §§ 1.1.a.5, 1.6, and 7.2.a.1." Pls.' Mem. in Supp. of their Mot. for Reconsideration at 14, ECF No. 133. However, upon review of the Amended Complaint, the Court can find no mention of WVSWMR § 1.1.a.5. Because no violation of § 1.1.a.5 was alleged, the Court does not address this provision.

provide that "solid waste" includes neither "industrial discharges which are point sources and have [NPDES] permits" nor "material resulting from . . . the exploration, development, production, storage, and recovery of coal . . . placed or disposed of at a facility which is regulated under Chapter 22 . . . of this code," so long as it conforms with a permit issued under those chapters. WVSWMA, W. Va. Code § 22-15-2; *see also* WVSWMR, W. Va. C.S.R. §§ 33-1-2.119.c, 2.119.f (same). Chapter 22 includes the State Water Pollution Control Act, W. Va. § 22-11, pursuant to which the WVDEP has obtained a permit pertaining to the Subject Property. Def. Ward's Supp. Mem. in Supp. of Summ. J. at 4, ECF No. 119.

Because "solid waste" does not include the materials and discharges being disposed of at the WVDEP's facility at the Subject Property, Defendant Ward has not violated the WVSWMA or the WVSWMR. The WVSWMA and the WVSWMR define an open dump such that it requires the disposal of solid waste. W. Va. Code § 22-15-2 (defining "open dump" as "any solid waste disposal which does not have a permit under this article, or is in violation of state law, or where solid waste is disposed in a manner that does not protect the environment"); W. Va. C.S.R. § 33-1-2.84 (defining "open dump" as "any solid waste disposal that does not have a permit under W. Va. Code § 22-15-1 et seq., and is not otherwise authorized by an order of the Secretary; or is in violation of state law; or where solid waste is disposed in a manner that does not protect the environment").

Plaintiffs argue that the WVDEP's activities at the site constitute "open dumping" because WVSWMR, W. Va. C.S.R. § 7.2.a. provides that "[a]ny site at which the following protective measures have not been instituted will be classified as an open dump." Pls.' Mem. in Supp. of their Mot. for Reconsideration at 19, ECF No. 133. They allege that it does not matter whether the material is "solid waste" or that the facilities at the site are not "industrial solid waste disposal

facilities" because § 7.2.a. defines an open dump as *any* site without protective measures. *Id.* In other words, despite the WVSWMA and the WVSWMR's specific inclusion of "solid waste" in their definitions of "open dump," Plaintiffs would have the Court interpret § 7.2.a. so as not to require "solid waste." *Id.*

Such an interpretation, however, would not comport with the context of this provision or its place in the overall regulatory scheme. "Regulations, like statutes, are interpreted according to the cannons of construction." *Black & Decker Corp. v. Comm'r*, 986 F.2d 60, 65 (4th Cir. 1993). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (internal quotation and citation omitted). To interpret § 7.2.a. as to not require solid waste would be to ignore the entire structure and purpose of the WVSWMA, and the accompanying regulatory scheme set forth in the WVSWMR—that is, to "establish a comprehensive program of controlling all phases of solid waste management." WVSWMA, W. Va. Code § 22-15-1. Plaintiffs themselves advanced this reading both in their Amended Complaint and during summary judgment. *See, e.g.*, Am. Compl. ¶ 13(j)(4), ECF No. 41 (defining "open dump" consistent with WVSWMR § 33-1-7.2.a to include "solid waste disposed of at other than a permitted site"); Pls.' Surreply in Further Opp'n to Def. Ward's Mot. for Summ. J. at 19, ECF No. 117 ("Pursuant to the express requirements of [§ 7.2.a], **every Solid Waste Facility** in West Virginia must have in place measure [sic] designed to **prevent** . . . the discharge of pollutants from the accumulated waste."). The Court, therefore, declines to interpret § 7.2.a. to apply to any site, regardless of whether it includes solid waste.

Plaintiffs also contend that the industrial point source exclusion does not apply to "the on-going, permanent disposal in the drying pits at the site of sludges periodically being removed from

the surface impoundments at the site" because "they are not waste conveyance facilities connected to the surface impoundments with the NPDES permit." Pls.' Mem. in Supp. of their Mot. for Reconsideration at 18, ECF No. 133. Plaintiffs mainly contend that the exclusion should not apply to the drying pits for two reasons: 1) the sludges are permanently disposed of in the drying pits, and 2) some leachate from the pits goes to Ditch No. 2, for which Defendant Ward does not have a NPDES permit. Pls.' Mem. in Supp. of their Mot. for Reconsideration at 19, 19 n.9, ECF No. 133. Because the drying pits should not be excluded from the definition "solid waste" set forth in the WVSWMA and WVSMR, they argue the Court improperly applied the industrial point source exclusion to drying pits at the site.[3]

The state law exclusions, however, apply to the WVDEP's activities at the site, as they cover materials "placed or disposed of at a facility which is regulated under [the State Water Pollution Control Act]" from the definition of "solid waste." WVSWMA, W. Va. Code § 22-15-2; *see also* WVSWMR, W. Va. C.S.R. §§ 33-1-2.119.c, 2.119.f. As Defendant Ward pointed out in briefing for summary judgment, the phrase "placed or disposed of at a facility regulated under [the State Water Pollution Control Act]" would be rendered surplusage if not interpreted to extend to materials upstream of but ultimately disposed of at a point source. Def. Ward's Supp. Mem. in

---

[3] It seems that Plaintiffs also mean to argue that the Court should reconsider its finding that the sludge in drying pits does not violate RCRA Subtitle D. They contend that the sludges "once removed from the Surface Impoundments at the Subject Property, cannot possibly fall within the 'industrial wastewater exclusion from the definition of Solid Waste' set forth in 40 C.F.R. § 257.1(c)(6)"—that is, the exclusion set forth in Subtitle D. Pls.' Reply Mem. in Further Supp. of their Mot. for Reconsideration at 13, ECF No. 135. The Court reminds Plaintiffs that, as to the theory of violation based on Subtitle D, it awarded summary judgment to Defendant Ward on two bases: 1) the open dumping criteria do not apply to the WVDEP's facilities and practices at the Subject Property, and 2) even if the groundwater criteria did apply, Plaintiffs have not presented evidence to suggest that the WVDEP violated those criteria. *Living Lands*, 2023 WL 2142981 at *9. Plaintiffs' efforts to argue as to the first basis of the Court's holding are futile, as they have not presented any challenge to the second basis.

Supp. of Summ. J. at 4, ECF No. 119. The sludge is ultimately part of the regulated facilities and practices at the Subject Property, which are in turn subject to the permit under Chapter 22. Additionally, the Court finds the lack of specific requirements for these facilities and practices telling. Plaintiffs claim "it is plainly manifest from the precise language of [WVSWMR §§ 1.6 and 7.2] that each of them would . . . clearly require the use of both liners and leachate collections systems in order to accomplish minimum compliance with the requirements of each of those Rules." Pls.' Reply Mem. at 10, ECF No. 135. The Court does not agree that these requirements are "plainly manifest"—rather, it finds the presence of specific liner requirements for other facilities, and the lack of specific requirements for the facilities in question, indicates that these requirements were not intended to be imposed on the WVDEP's activities at the Subject Property. *See, e.g.*, WVSWMR, W. Va. C.S.R. §§ 33-1-5.4, 33-1-5.5.

As a final matter, Plaintiffs seek to distance themselves from any argument as to state waste management law being preempted by RCRA. They argue this is an improper characterization, and that Defendant Ward was the only party to dub their argument a preemption one. Pls.' Mem. in Supp. of their Mot. for Reconsideration at 16-17, ECF No. 133. After reviewing the transcript of the pretrial motions hearing, the Court notes that Plaintiffs' argument certainly sounds like a preemption one—there, they argued that any mining waste exception "doesn't matter under the state reg[ulation]s" because federal law requires the state to prohibit all future open dumps and remediate any existing ones.[4] Hr'g Tr. 33:7-20, ECF No. 127. Still, for the sake of clarity, the

---

[4] During briefing for summary judgment, Plaintiffs also refer to "the overriding issue of whether [the state law] exclusion is, for purposes of construing and enforcing the prohibition on Open Dumping facilities and practices set forth in RCRA § 4005(a), a valid provision of state law under the Supremacy Clause of Article VI, Section 2 of the U.S. Constitution." Pls.' Surreply in Further Opp'n at 10-11, ECF No. 117. Despite diligent efforts, the Court cannot conceive of a way such an issue could be construed outside of one of preemption.

Court will interpret Plaintiffs' argument more liberally and accept their assertion that any inference to federal preemption was unintentional. That is, the Court will view Plaintiffs' argument as being that any state solid waste management plan would not have been approved by the EPA if it conflicted with RCRA Subtitle D. Pls.' Mem. in Supp. of their Mot. for Reconsideration at 17, ECF No. 133. As the Court addressed in its initial memorandum opinion and order granting summary judgment to Defendant Ward, excluding the WVDEP's facilities and practices at the Subject Property does not violate RCRA Subtitle D. Accordingly, the Court's reading of the WVSWMA and the WVSWMR do not conflict with RCRA Subtitle D.

Because neither the interpretive memo nor Plaintiffs' theory of violation based on the WVSWMA and WVSWMR change the Court's disposition as to summary judgment for Defendant Ward, the Court **DENIES** Plaintiff's Motion to Reconsider. ECF No. 132. As laid out in its previous Order, the Court grants summary judgment as to all remaining claims against Defendant Ward. *See Living Lands,* 2023 WL 2142981, at *14.

II.     Defendant Ward's Motion to Certify Orders Under Rule 54(b)

All claims against him having been dismissed, Defendant Ward seeks to certify the Court's previous orders. Def. Ward's Mot. to Certify Orders Under R. 54(b), ECF No. 130. He argues that there is no just reason for delay, as all claims against him have been resolved, there is little relationship between adjudicated and unadjudicated claims, and there is little chance the need for review would be mooted. *Id.* Plaintiffs did not respond to this Motion.

Pursuant to the Federal Rules of Civil Procedure 54(b), courts may "direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Certification need not be granted routinely. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980). Rather, it should be "reserved for

the unusual case in which the costs and risks of multiplying the number of proceedings and overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties." *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993) (quoting *Morrison–Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981)). The moving party bears the burden of demonstrating that certification is warranted. *Id.*

Rule 54(b) involves a two-step inquiry: whether the judgment is final and whether there is any just reason for delaying the entry of judgment. *Id.* (citing *Curtiss-Wright*, 446 U.S. at 7-8). A judgment if final when it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Curtiss-Wright*, 446 U.S. at 7 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)). In assessing whether there is just reason for delay, courts examine the following factors:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Braswell Shipyards*, 2 F.3d at 1335−36.

The Court finds that its order granting summary judgment is a final disposition and that there is no just reason for delay. First, the judgment is final in that the Court has granted summary judgment on all remaining claims against Defendant Ward. *Living Lands,* 2023 WL 2142981, at *14; *see also Graham v. Dhar*, No. 1:18-00274, 2020 WL 5096998, at *3 (S.D.W. Va. Aug. 28, 2020) (finding that orders granting summary judgment constituted "final judgments" under Rule 54(b)). Second, there is no just reason for delay. Because of the substantial differences in the nature

of the defendants, there is little chance of appellate review being mooted by future developments in this Court. The claims pertaining to Defendant Ward are unique in both the factual background and the legal backdrop, meaning that there is little overlap between them. Likewise, there is little possibility that the appellate court would have to consider the same issue twice or that there would be a set-off against the judgment pertaining to Defendant Ward. Finally, given Plaintiffs' struggles to locate insurance policies for Defendant Cline, economic considerations and the need to avoid delay weigh in favor of certification.

Based on these factors, the "risk of piecemeal litigation" is substantially outweighed by "the potential benefits of entering a final judgment." *Graham v. Dhar*, 2020 WL 5096998, at *3 (citation omitted). The Court, therefore, **GRANTS** Defendant's Motion to Certify Orders Under Rule 54(b). ECF No. 130.

## CONCLUSION

For the reasons above, the Court **DENIES** Plaintiff's Motion to Reconsider (ECF No. 132) and **GRANTS** Defendant Ward's Motion for Certification (ECF No. 130).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: May 15, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE